OTIS BARDWELL *v.* GEORGE PERRY, PHILIP F. PERRY, GATES PERRY, Jr., AND TISDALE PORTER.

IN CHANCERY.

At *law* both separate and joint creditors of a partnership may attach either separate or joint property, and sell it upon execution in satisfaction of their judgments without regard to the equities of the debtors.

But in *equity* the partnership effects are pledged to each separate partner, until he is released from all his partnership obligations; and, while the partnership continues, this equitable lien, existing for the benefit and security of the separate partners, may be reached in a court of equity by the creditors of the firm, for the purpose of securing to themselves a preference over the separate creditors.

A partnership contract imposes precisely the same obligation upon each separate partner, that a sole and separate contract does; and there is no express or implied contract, resulting from the law of partnership, that the separate estate shall go to pay separate debts exclusively. All that the separate creditors can require, in equity, is, that the partnership creditors must first exhaust the partnership funds, before resorting to the separate effects of the individual partners; and beyond this both sets of creditors stand precisely equal, both at law and in equity.

It is no ground, in chancery, for postponing a prior to a subsequent attachment, that the second attaching creditor was induced to delay his attachment by being told, by the other creditor, that he had already attached the property, when in fact he had not, whereby he gained time and opportunity to put his attachment first upon the property.

In this case the defendants appealed from the decree of the chancellor, and the decree was reversed in this court; and no costs in the court of chancery were allowed to the defendants; but they were allowed their costs in this court, as matter of right.

APPEAL from the court of chancery. The orator alleged, in his bill, that, on the tenth day of October, 1842, one William Bellows was indebted to him, and that he sued out a writ of attachment against.him, and placed the same in the hands of the defendant Porter, then constable of Athens, and caused to be attached thereon certain property which belonged to Bellows; that this suit was reg-

Bardwell v. Perry et al.

ularly entered and was still pending in court; that Bellows and one Philip Peck had before that time been co-partners in trade under the firm of Philip Peck & Co., and, as such, were indebted to the defendants George Perry and Philip F. Perry; that these defendants also sued out a writ of attachment against the firm, and, knowing the intention of the orator to attach the property of Bellows in question, by fraudulently telling the orator that they had already attached the property, induced him to delay his attachment, and were thereby enabled to cause the same property to be attached upon their suit; that that writ was also served by the defendant Porter, and the suit had been entered in court, and judgment obtained, and the execution had been first placed in the hands of the defendant Gates Perry, Jr., and afterwards in the hands of Porter, and that Porter, who had previously sold the property upon mesne process, under the statute, had applied, or was about to apply the avails upon the execution; that Bellows and the firm of Philip Peck & Co. were wholly insolvent, and Peck and Bellows had been decreed bankrupts by the district court of the United States in the State of New Hampshire; and that the orator had no means whatever of collecting his debt against Bellows, except from the avails of the property in question. And the orator prayed, that Porter might be enjoined from applying the avails of the property upon the defendants' execution, or that, if he had already done so, the defendants George Perry and Philip F. Perry might be decreed to hold the same in trust, to be applied in payment of the separate debt of the orator, due from Bellows, in preference to the partnership debt due to them.

The defendants answered, denying the fraudulent representations alleged in the bill, and admitting the attachment of the property of Bellows upon a debt due from the firm of Philip Peck & Co., as alleged in the bill, and insisting upon their right, by virtue of the priority of their attachment, to have the property applied in payment of their debt.

The answers were traversed, and testimony was taken on the part of the orator, tending to prove that he sued out his writ of attachment, as alleged in his bill, and that he was about to have the same served by attaching the property in question, when he was informed by the defendants George Perry and Gates Perry, Jr., that they had already attached the property, when in fact it had not been

attached, and that thereby the orator was induced to delay proceeding, so that the defendants were enabled to, and did, cause the property to be first attached upon their writ. It appeared, that the property had been sold by Porter, upon the writs of attachment, under the statute, and that, subsequently to the commencement of this suit, he had applied the avails upon the execution obtained by the defendants upon their demand. It also appeared, that both Bellows and Peck had been duly declared bankrupts.

The court of chancery decreed, that the defendants George Perry and Philip F. Perry should pay to the orator, by a time specified, the avails of the property in question, with costs, and that the defendants Gates Perry, Jr., and Porter should be dismissed without costs. From this decree the defendants appealed.

*W. C. Bradley* for orator.

The orator contends, that he is entitled to be satisfied out of the private effects attached in his suit, in preference to the partnership creditors. *Ex parte Elton*, 3 Ves. 240. Wats. on Part. 263. 1 Story's Eq. § 675. Story on Part. §§ 365, 376.

Besides, it is contended, that a priority, gained by the misrepresentation of the defendants as to their having already made an attachment, whereby the orator, to save fruitless expense, was induced at the time not to pursue his rights, cannot avail them. 1 Story's Eq. §§ 186–193. *Plymouth* v. *Windsor*, 7 Vt. 327.

*Walker & Kellogg* for defendants.

The question raised in this case is, whether the court will adopt the English rule, that in general, in case of copartnership, joint creditors shall first be paid out of the joint funds, and the separate creditors out of the separate funds of each partner.

Several reasons are given for this rule, none of which seem to apply with much force here. The principal one is that given by Lord Hardwick, in *Twiss* v. *Massey*, 1 Atk. 68, that the joint creditors give credit to the joint estate, and the separate creditors to the separate estate. Whatever may have been the case in England, at the time this rule was adopted, and whatever it may now be in purely commercial communities, *here* the reason has no force, and is false in fact. It is said, also, that the preference of the joint creditors to the

joint fund is worked out through the equity of the partners. Story on Part. 133, 136, 501. Story's Eq. 625. *Ex parte Ruffin*, 6 Ves. 119, 126. *Ex parte Kendall*, 17 Ves. 514. No satisfactory reasons are given for this doctrine; and it has been frequently characterized as purely artificial and having no foundation in natural justice. Indeed, partners should be the last to have any lien upon each other's effects. *Brewster* v. *Hammett*, 4 Conn. 540, 543. Another reason, given for the rule, is the promotion of trade, by keeping up the credit of trading companies. But, as this court has said in *Reed et al.* v. *Shephardson*, 2 Vt. 120, we have no motive to encourage partnerships, any more than individual business men.

The question, whether, at law, joint creditors should have a priority of payment over separate creditors out of the joint estate, was fully considered by this court in *Reed et al.* v. *Shephardson*, 2 Vt. 120. The cases of *King* v. *Sanderson*, Wightw. 50,—6 Excheq. R. 443,—*In re Smith*, 16 Johns. 102, *Church et al.* v. *Knox et al.*, 2 Conn. 514, 517, *Brewster et al.* v. *Hammett et al*, 4 Ib. 540, *Barber* v. *Hartford Bank*, 9 Ib. 407, *Witter* v. *Richards*, 10 Ib. 37, and *Pierce* v. *Jackson*, 6 Mass. 242, which decide, that the separate creditor can only levy upon the interest of the individual partner in the goods, subject to the rights of the other partners and the debts of the firm, were pressed upon the court in that case ; but they decided, that the partnership creditors were entitled to no such priority. And if this court do not follow the rule establised at *law* in other states, why should they follow the *chancery* rule upon the subject?

But should the court see fit to adopt the rule, that joint creditors shall first be paid by the joint funds, we apprehend it by no means follows, that they will adopt the converse rule, that separate creditors are first to be paid from the separate fund. This principle, so far as it has been adopted at all, was adopted when it was the established doctrine of courts of equity, that debts against a co-partnership were joint, and not joint and several. Story on Part. 362, 514. Collyer on Part. 366. But it is now well settled, that such debts are several, as well as joint. Story on Part. 514. 1 Story's Eq. 626, n. *Devaynes* v. *Noble*, 1 Mer. 528, 564 ; 2 Rus. & Mylne 495. 13 Eng. Cond. Ch. R. 145. *Sumner* v. *Powell*, 2 Mer. 37. *Wilkinson* v. *Henderson*, 1 Mylne & K. 582 ; 7 Cond.

Ch. R. 173.   *Thorpe* v. *Jackson*, 2 Younge & Col. 553.   This be-
ing so, we do not see why, upon principle, such debts should not,
as against the several estates, be treated like other several debts.   1
Story's Eq. 526, n.   Collyer on Part. 337.   Story on Part. 540.

But the rule contended for is not only wrong in principle, but it is
unjust and oppressive in practice.   It has not been uniformly adher-
ed to, and, in the emphatic language of Judge Story, rests on a
foundation as questionable and as unsatisfactory as any rule in the
whole system of jurisprudence.   Story on Part. 531, 541.   It was
adopted by Lord Hardwick, but broken in upon by Lord Thurlow,
who allowed joint creditors to prove and take dividends under sep-
arate commissions.   Gow on Part. 312, 314.   Story on Part. 532, n.
*Dutton* v. *Morrison*, 17 Ves. 207.   It was restored by Lord Lough-
borough, and though followed by Lord Eldon, it was with great
doubt as to its correctness.   Story on Part. 538.   *Ex parte Hill*, 5
B. & P. 191, n.

The unsatisfactory character of the rule in question is exempli-
fied in the numerous exceptions to it, and the evident inclination of
courts to increase those exceptions.   Thus it is well settled, that, in
case of a deceased partner, the joint creditor may proceed in equity
directly against his estate, whether the survivors are bankrupts, or
not; *Devaynes* v. *Noble* 1 Mer. 528; *Wilkinson* v. *Henderson*, 1
Mylne & K. 582 ; *Thorpe* v. *Jackson*, 2 Younge & Col. 553 ; and
if there is no joint estate, then the joint creditors, in such case,
are to be paid *pari passu* with separate creditors ; *Cowell* v. *Sykes*,
2 Russ. 191; 3 Cond. Ch. R. 76 ; Collyer on Part. 528 ; *Wilder* v.
*Keeler*, 3 Paige 167, 172.   So in bankruptcy, if a joint creditor be
a petitioner for a separate commission against the partner, he may
share *pari passu* with the separate creditors ; *Ex parte Crisp*, 1 Atk.
133; Story on Part. 538 ; Collyer on Part. 527.   So, where there is
no joint estate and no solvent partner ; *Ex parte Hill*, 5 B. & P.
191, n.; *Ex parte Johnson*, 3 Madd. 229; Story on Part. 539, 540 ;
Collyer on Part. 528.   In *Payne* v. *Matthews*, 6 Paige 19–21, a sur-
viving partner, who had paid joint debts out of his private funds, was
allowed to claim from the estate of the deceased partner *pari passu*
with the other creditors.   And in Massachusetts the separate prop-
erty of each member of a co-partnership is liable to be attached for
the debts due from the firm; *Newman* v. *Bagley*, 16 Pick. 348;
*Allen* v. *Wells* 22 Pick. 450.

The opinion of the court was delivered by

REDFIELD, J.    Having just now determined, in the case of *Washburn et al.* v. *Bellows Falls Bank et al.,* [*ante* p. 278,] that the partnership creditors are entitled to a preference in regard to partnership effects, it might be supposed to follow, almost as a matter of course, that the separate creditors ere equally entitled to a preference, as to the separate funds.   But upon examination it will be found there are many difficulties in coming to this conclusion.   I propose first to examine this case upon principle, and then with reference to the decided cases bearing upon the subject.

I.   Upon principle, it would follow, that the joint creditors, having a preference as to the partnership funds, might be compelled to resort to them, until they were exhausted.   This would be done upon the familiar principle of marshalling assets, that, where one creditor had a claim upon two or more funds, and others only upon one of those funds, he should first be compelled to exhaust the fund upon which *he* only had a lien, or upon which he had the prior right, before resorting to the other, or else to assign, upon payment of his demand.   Thus far there is no difficulty in the case.

But what shall be done, when there are no partnership funds, or when they are inadequate to liquidate the partnership debts?   Can the partnership creditors, in such case, be wholly excluded from the separate estate, or postponed to the separate creditors?   I confess, upon principle, it is difficult to view the matter in this light.   There does not seem to me, upon principle, to be any ground whatever for the interference of a court of equity, in such case, beyond the point of requiring joint creditors to be confined to the joint fund, until that is exhausted.   To this extent, no doubt, a court of equity should interfere.   Beyond this, it seems to me, that whatever power they have exercised in England, in giving a preference to separate creditors, as to separate funds, has been, either upon the mere ground of the English bankrupt laws, or else upon the mistaken ground, that a partnership creditor has no separate and entire claim upon the individual responsibility of each partner, for his whole debt; the latter of which grounds is sufficiently examined in the case just decided, and the former ground can have no application here.   All that is said in the case of *Washburn et al.* v. *Bellows Falls Bank et al.* as to the reason, upon which the preference

of joint creditors is founded, shows, I think, or tends to show, very fully, that no such right of preference does or can exist in favor of separate creditors, as to the separate estate of their debtors, upon general principles of equity, certainly, beyond the extent named above.

II.  But we must examine the cases; and if any such right of preference is found to exist, upon general principles of equity, the separate creditors must here enjoy it, notwithstanding it is difficult to see the grounds upon which it rests. It seems to me, that some confusion upon this subject might be saved by a clear perception and definition of the reasons, upon which the preference is allowed to joint creditors, or partnership creditors, as to partnership funds. If that preference is allowed solely upon the ground, that it is a part of the law of partnership, that all funds invested in the business, and acquired by it, are, by an implication of the very law of the association, pledged, firstly, for the payment of all the partnership debts, and that the interest of the separate partners is only a share in what remains after all the liabilities of the concern are liquidated, it is obvious that no such reason exists for giving a preference to separate creditors in regard to the separate estate.  The contract of the partnership makes no pledge, or appropriation, of the separate property exclusively to separate debts.  It is indeed expected, that the separate property will not be required for the payment of the partnership debts; and it is a part of the contract of partnership, that the separate funds will not be liable, until all the partnership funds are exhausted; and thus far equity can justly interfere, and no farther, it seems to me, upon this ground alone.  Beyond this point the separate estate of each partner is bound to the same extent for partnership as for any other debts.  It is the debt of each partner, *in solido;* Jenkins v. De Groot, 1 Caine's Cas. 122, 1804, in a very sensible opinion by Thompson, J.; Gray v. Chiswell, 9 Ves. 118; Devaynes v. Noble, 1 Mer. 529; S. C., before the chancellor, 2 Russ. & Mylne 495; and many other cases, some of which are referred to by Mr. Justice Story, [1 Eq. Jurisp. 626, and note 1.]

But the case of Gray v. Chiswell, while it distinctly recognizes the partnership debts, as imposing upon each partner the obligation of full payment, expressly determines, that the separate creditors are entitled to be first paid out of the separate estate.  This is the first

case, says Lord Eldon, where, in chancery, this point has been distinctly presented and decided, although the question in bankruptcy was familiar. And the question seems here to be viewed as one of great doubt and difficulty. And this decision seems to result from the bankrupt laws, by which the joint claim is postponed, until after all separate debts are paid. And this rule is, by the chancellor, adopted, finally, upon the ground, mainly, it would seem, that the same rule should prevail in chancery as in bankruptcy,—which in England, as is well known, is really under the control of the chancellor also. Since that time this rule has been repeatedly, and almost-constantly, recognized in the English chancery, but without much farther investigation. Before that time it had been constantly vacillating, upon the kindred subject of the right of partnership creditors to prove their debts, under a separate commission, against one partner. The 'history of this subject is fully and clearly stated by the chancellor, in *Murray* v. *Murray*, 5 Johns. Ch. R. 60. Lord Thurlow, in *Ex parte Hodgson*, 2 Brown's Ch. R. 5, established the rule in bankruptcy, even, that a joint creditor might prove his debt under a separate commission, and receive a dividend *pari passu* with the separate creditors. This rule was acted upon during all the time of Lord Thurlow, and until reversed and put back upon the ground established by Lord Hardwick, by Lord Loughborough, in *Ex parte Elton*, 3 Ves. 238. See this subject succinctly stated by Lord Eldon, in *Ex parte Clay*, 6 Ves. 814. But the numerous exceptions, which have been engrafted upon this rule, even in bankruptcy, and the unsettled state of the practice in regard to it in England, show very fully to my mind, that, in principle, it rests upon no satisfactory basis ; certainly not upon the principles of general equity.

1. In the case of *Sadler & Jackson ex parte*, 15 Ves. 52, it is decided, that joint creditors may prove their debt, under a separate commission, for the purpose of receiving dividends *pari passu* with the separate creditors, there being no joint estate or solvent partner. This shows, very clearly, that the rule itself rests upon no absolute equity. If it were so, an exception could not be admitted upon a ground, which, for every purpose except the bankrupt laws, subverts the rule itself. And accordingly it is held, that if there be a solvent partner, the joint creditor cannot prove under the separate commis-

sion. *Kensington ex parte*, 14 Ves. 447. And in *Ex parte Pinck-erton*, in note to *Ex parte Clay*, the chancellor allowed a joint creditor to prove his debt under a separate commission, there being no joint property, but a solvent partner, who was abroad and not expected to return ; Lord Eldon constantly remarking, in almost all the cases which came before him upon this subject, in substance, as he did here in terms, " Whatever be thought of the settled rule, he should adhere to it, on account of the mischief arising from shaking settled rules; but he observed, that it seemed very singular, that the nature of the debt should turn upon the fact, whether there is joint property, or not." This contains a distinct admission, by so discriminating and cautious a judge as Lord Eldon, that the rule, as administered in bankruptcy, rested upon no rational basis.

2. Another exception, which obtains in England under the statutes of bankruptcy, is, that a partnership creditor may be a petitioning creditor for a separate commission against one of the partners, and, being so, is entitled to a dividend with the separate creditors. I have not examined the English bankrupt statutes, and this rule may be based upon them mainly; but whether so, or not, it evidently subverts all equity, or principle, upon which the rule may be supposed to rest in a court of equity.

3. Another mode, in which the English court of chancery have dispensed with this rule, shows very clearly, I think, that no confidence in its justice is there felt. It is now, I consider, a settled rule, in the English chancery, to treat all joint bonds as several also, upon the ground of a supposed mistake in the execution of them, where there is not positive proof, out of the contract itself, that it was positively the intention of the parties to the bond, that it should be joint and not several. This practice is treated as a virtual reforming of the deed, upon the ground, merely, that the parties must have intended to bind all the signers for the whole debt, and equally. *Thomas* v. *Frazer*, 3 Ves. 399 ; *Gray* v. *Chiswell, ubi supra; Burn* v. *Burn*, 3 Ves. 573 ; *Thorpe* v. *Jackson*, 2 Y. & Col. 553; *Wilkinson* v. *Henderson*, 1 Mylne & Keene 582. And although courts of equity may sometimes have applied this same rule of intendment to other cases, it is certain, that its application here must have been intended to get rid of the application of that rule of distribution of separate estate, which would work manifest injustice, if applied,

But thus to save the necessity of infringing an absurd general rule, by what, in others, would be deemed scarcely less than a palpable evasion, can never be very creditable to a court of justice. It would be more dignified, and more consistent with a just regard to truth, to abrogate the rule.

In the case of *Tucker* v. *Oxley*, 5 Cranch 34, which was the case of a partnership creditor during the existence of the first U. S. bankrupt law, the supreme court of the United States held, that partnership creditors were entitled to prove their debts, for the purpose of receiving a dividend, under a separate commission, and that equity alone could restrain such joint creditor. The reasoning of so distinguished a jurist and judge as Ch. J. Marshall, in this case, fully shows, that he esteemed the partnership obligation precisely the same upon each partner, that any separate individual contract was, and that equity could only restrain the joint creditors, until they had exhausted the joint fund; and that then they must, even in equity, come in for the balance, the same as other creditors of the separate partners.

This view of the case is still more strongly confirmed by the doubts of Mr. Justice Story (in 1 Eq. Jur. 626, note,) whether the case of *Devaynes* v. *Noble* had not in fact abolished all ground of preference between joint and several creditors. We think it clearly has, so far as the separate property of the partners is concerned, and that this is an universal principle of the law merchant, or of the law of partnership, which is a department of that law. But the right of the partnership creditors to a preference, in regard to partnership funds, rests upon a different basis, as we have attempted to show in the case of *Washburn et al.* v. *Bellows Falls Bank et al.* Hence we conclude, that this rule, giving the separate creditors the exclusive right to the separate property of the partners, until their debts are paid, is merely a rule of convenience for the distribution of funds, under the English bankrupt laws, and that it has no foundation in general equity. In saying this we are not unmindful, that Chancellor Kent, in the late edition of his Commentaries, [3 Kent 65, 66, and notes,] still adheres to the opposite rule, and that he is supported by many respectable American cases, which are cited by him, some more and some less in point. But we understand, that the entire distinction between separate and partnership creditors,

even as to partnership funds, is disregarded in Pennsylvania and in Georgia. *Bell* v. *Newman*, 5 Serg. & R. 78; 1 Ashmead 347; *Ex parte Stebbins & Mason*, R. M. Charlton 77. And although no case, perhaps, has taken precisely the ground here adopted, we still think it the only ground, which can be maintained upon general principles of equity.

In this particular case, there being no joint estate or solvent partner, the orators could not exclude the defendants from a share in the separate estate of each partner, even under the English bankrupt laws. The parties, therefore, standing precisely equal in point of equity, and the defendants having first attached, and thereby gained a prior right at law, must be permitted to pursue it. And so far as this particular case is concerned, we pursue precisely the English rule, since the case of *Devaynes* v. *Noble*. But the English courts held this doctrine to be an exception to the general and only rule of equity.

We have said nothing upon the ground, alleged in the bill, of the fraud attempted by the defendants, in representing that they had attached the goods before they in fact had; for we did not suppose the orator seriously expected to prevail upon that ground; that was just such a falsehood as he might have expected, and to put confidence in such an assertion was his own folly. I have said nothing of the argument for the preference in this case, which is sometimes used, that the separate creditors have given credit to the separate property and the joint creditors to the joint property, for the reason that there is no truth in any such assumption.

The result of all the decisions in the state upon this subject now is; 1, That, at law, both separate and joint creditors may attach either separate or joint property, and sell it upon execution in satisfaction of their judgments, without regard to the equities of the debtors;—2, That in equity, by the very law of partnership, the partnership effects are pledged to each separate partner, until he is released from all his partnership obligations; but that this lien is solely under the control of the partners; and it would follow, doubtless, that if the partnership be dissolved and the effects assigned to one partner, this pledge, or lien, is gone,—as was held in *Ex parte Ruffin*, 6 Ves. 119; but that, while the partnership continues, this equitable lien, existing for the benefit and security of the separate

partners, may be reached in a court of equity by the creditors, as the only mode of fully carrying into effect the stipulations of the parties at the time of forming the association:—3, That a partnership contract imposes precisely the same obligation upon each separate partner, that a sole and separate contract does, and that it is not true, that, in joint contracts, the creditor looks to the credit of the joint estate, and the separate creditor to that of the separate estate; and that there is no express or implied contract resulting from the law of partnership, that the separate estate shall go to pay separate debts exclusively; but(that, as the partnership creditors, in equity, have a prior lien upon the partnership funds, chancery will compel them to exhaust that remedy before resorting to the separate estate;—but that, beyond this, both sets of creditors stand precisely equal, both at law and in equity.)

The decree in this case must be reversed, and the following mandate sent to the court of chancery. "The bill of *Bardwell* v. *Perry et al.,* must therefore be dismissed in the court of chancery, there being no joint estate out of which the plaintiffs can be compelled to take their satisfaction; but we recommend to the chancellor, that no costs be allowed the defendants, in the court of chancery." In this court they are entitled to their costs, as matter of right.