Bartley, C. J.
Two questions are presented for determination in this case. The first is, whether in the distribution of the assets •of insolvent partners, where there are both individual and partnership assets, the individual creditors of a partner are entitled to be ■first paid out of the individual effects of their debtor, before the partnership creditors are entitled to any distribution therefrom. It is well settled that, in the distribution of the assets of insolvent partners, the partnership creditors are entitled to a priority in the partnership effects; so that the partnership debts must be settled before any division of the partnership funds can be made among -the individual creditors of the several partners. This is incident to the nature of partnership property. It is the right of a partner *163 to have the partnership property applied to the purposes of the firm; and the separate interest of each partner in the partneship property, is his share of the surplus after the payment of the partnership debts. And this rule, which gives the partnership creditors a preference in the partnership effects, would seem to produce, in equity, a corresponding and correlative rule, giving a preference to the individual creditors of a partner *in his separate property ; so that partnership creditors can, in equity, only look to the surplus of the separate property of a partner, after the payment of his individual debts; and, on the other hand, the individual creditors of a party can, in like manner, only claim distribution from the debtor’s interest in the surplus of the joint fund, after the satisfaction of the partnership creditors. The correctness of this rule, however, has been much controverted; and there has not been always a perfect concurrence in the reasons assigned for it by those courts which have adhered to it. By some, it has been said to be an arbitrary rule, established from considerations of convenience; by others, that it rests on the basis that a primary liability attaches to the fund on which the credit was given — that in contracts with a partnership, credit is given on the supposed responsibility cf the firm; while in contracts with a partner as an individual, reliance is supposed to be placed on his separate responsibility. ■3 Kent Com. 65. And again, others have assigned as a reason for the rule, that the joint estate is supposed to be benefited to the extent of every credit which is given to the firm, and that the .separate estate is, in like manner, presumed to be enlarged by the debts contracted by the individual partner; and that there is consequently a clear equity in confining the creditors, as to preferences, to each estate respectively, which has been thus benefited by their transactions. 1 Har. & Grill, 96. But these reasons are not entirely satisfactory. So important a rule must have a better foundation to stand .upon than mere considerations of convenience; and practically it is ixndeniable, that those who give credit to a partnership, look to the individual responsibility of the partners, ■as well as that of the firm; and also, those who contract with a partner in his separate capacity, place reliance on his various resources or means, whether individual or joint. And inasmuch as individual debts are often contracted to raise means which are put into the business of a partnership, and also partnership effects often withdrawn from the firm and appropriated to the separate *164 ■use of the partners, it can not be practically true, that the separate estate has been benefited to the extent of every credit given to each individual partner, nor that the joint estate *has retained from the separate estate of each partner, the benefit of every credit given to the firm. Unsatisfactory reasons may weaken confidence in a rule which is well founded.
What then is the true foundation of the rule, which gives the individual creditor a preference over the partnership creditor, in the distribution of the separate estate of a partner ? To say that it is a rule of general equity, as has been sometimes said, is not a satisfactory solution of the difficulty; for the very question is, whether it be a rule of equity or not. In the distribution of the assets of insolvents, equality is equity; and to say that the rule which gives the individual creditor a preference over the partnership creditor in the separate estate of a partner, is a rule of equality, does not still rid the subject of difficulty. Eor, leaving the rule to stand, which gives the preference to the joint creditors in the partnership property, and perfect equality between the joint and individual creditors, is, perhaps, rarely attainable. That it is, however, more equal and just, as a general rule, than any other which can be devised, consistently with the preference to the partnership creditors in the joint estate, can not be successfully controverted. It originated as a consequence of the rule of priority of partnership creditors in the joint estate, and for the purposes of justice, became necessary as a correlative rule. With what semblance of equity could one class of creditors, in preference to-the rest, be exclusively entitled to the partnership fund, and, concurrently with the rest, entitled to the separate estate of each partner? The joint creditors are no more meritorious than the separate creditors; and it frequently happens, that the separate debts are contracted to raise means to carry on the partnership business. Independent of this rule, the joint creditors have, as a general thing, a great advantage over the separate creditors. Besides being exclusively entitled to the partnership fund, they take their distributive share in the surplus of the separate estate of each of the several partners, after the payment of the separate creditors of each. It is a rule of equity, that where one creditor is in a situation to have two or more distinct securities or funds to rely on, the court will not allow him, neglecting his other funds, to attach himself to one of the funds to the prejudice *of those who *165 have a claim -upon that, and no other to depend on. And besides the advantage, which the joint creditors have, arising from the fact that the partnership fund is usually much the largest, as men in trade, in a great majority of cases, embark their all, or the chief part of their property, in it; and besides their distributive rights in the surplus of the separate estate of the other partners, the joint .creditors have a degree of security for their debts and facilities for recovering them, which the separate creditors have not; they can •sell both the joint and the separate estate on an execution, while the separate creditor can sell only the separate property and the interest in the joint effects that may remain to the partners, after the accounts of the debts and effects of the firm are taken, as between the firm and its creditors, and also as between the partners themselves. With all these advantages in favor of partnership •creditors, it would be grossly inequitable to allow them the exclusive benefit of the joint fund, and then a concurrent right with individual creditors to an equal distribution in the separate estate of each partner. What equality and justice is there in allowing partnership creditors, who have been paid eighty per cent, on their ■debts, out of the joint fund, to ‘come in pari passu with the individual creditors of one of the partners, whose separate property will not pay twenty per cent, to his separate creditors ? How ■could that be said to be an equal distribution of the assets of insolvents among their creditors ? It is true, that an occasional case may arise where the joint effects are proportionably less than the separate assets of an insolvent partner. But, as a general thing, a very decided advantage is given to the partnership creditors, notwithstanding this preference of the individual creditors in the separate property. And that advantage, arising out of the nature of a parnership contract, is unavoidable. Some general rule is necessary; and that must rest on the basis of the unalterable preference of the partnership creditors in the joint effects, and their further right to some claim in the separate property of each of the several partners. The' preference, therefore, of the individual creditors of a partner in the distribution of his separate estate, results, as a principle of equity, from the preference of ^partnership creditors in the partnership funds, and their advantages in having different funds to resort to, while the individual creditors have but the one.
It has been argued that partnership contracts are several as well *166 as joint, and consequently have an equal legal right with separate creditors upon the individual property of a partner. But the right of partnership creditors against the separate property of individual partners in proceedings at law, is not in controversy. The question here relates to the relative equitable rights of two classes of creditors in the distribution of the estates of insolvents. Much of the confusion upon this subject has probably arisen from confounding the abstract rights of creditors in proceedings at law, with their relative rights to an equitable adjustment in marshaling the assets of insolvents in chancery.
The rule here adopted appears to have been followed in England for near a century and a half. We find it distinctly recognized in the case of Ex parte Crowder, 2 Vern. 706, decided in 1715. And in Ex parte Cook, 2 Peer Williams, 500, Lord Chancellor King declared it settled as a rule of convenience in bankruptcy, that joint creditors should be first paid out of the partnership estate, and the separate creditors out of the separate estate of each partner; and if there be a surplus of the joint estate after paying the joint creditors, the share of each partner should be distributed to his separate creditors; and if, on the other hand, there should be a surplus of the separate estate of a partner after the satisfaction of his individual creditors, it should be applied to any deficiency of the joint funds in the satisfaction of the partnership debts. Lord Hardwicke followed the same rule, in Ex parte Hunter, 1 Atkins, 228. But it. appears that in Ex parte Hodgson, 2 Bro. ch. c., decided in 1785, Lord Thurlow made an innovation on the rule in bankruptcy, declaring that there was no distinction between joint and separate creditors; that they ought to be paid out of the bankrupt’s estate, and his moiety of the joint estate; and that the joint creditors ought to come in pari passu with the separate creditors. This ruling of Lord Thurlow appears to have had reference to proceedings at law *and in bankruptcy, for it is said that, consistently therewith, it was competent for the assignees to confine the joint creditors, where there was a joint estate, to that fund exclusively, by filing a bill in equity against the other partners, and obtaining an injunction on the order in bankruptcy. But how far this innovation went, in practice, to affect the ultimate rights of the parties, is wholly immaterial, inasmuch as Lord Loughborough, in Ex parte Elton, 3 Y es. Jr. 238, in the year 1796, restored the rule which previously prevailed, holding that the rule introduced by the case if *167 Hodgson, was inconvenient, inasmuch as every order which he passed in bankruptcy, giving a joint creditor a dividend out of the separate estate of a partner, would give rise to a bill in equity, on the part of the separate creditors, to restrain the order, and secure the application of the separate estate to the satisfaction of the separate debts; and although it was adjudged, that a joint creditor might prove his claim under a separate commission, yet he could not receive any dividend therefrom, until the amount of his distribution in the joint fund could be ascertained, and the claims of the separate creditors satisfied. And the opinion of the lord chancellor, in this case, puts an end to the assertion, which has been sometimes made, that this rule was peculiar to proceedings in bankruptcy. Touching this, he said: “ If it stands as a rule of law, we must consider, what I have always understood to be settled by a vast variety of cases, not only in bankruptcy, but upon general equity, that the joint estate is applicable to partnership debts, and the separate estate to the separate debts.” Again, in speaking of the inconvenience of Lord Tkurlow’s rule, he said : “What I order here to-day, sitting in bankruptcy, I shall forbid to-morrow, sitting in chancery for it is quite of course to stop the dividend on 'a bill filed. The plain rule of distribution is, that each estate shall bear its own debts. The equity is so plain, that it is of course upon a bill filed.
Lord Eldon, with some characteristic doubts and misgivings, consistently followed this rule of his immediate predecessor. Chiswell v. Gray, 9 Ves. 126; Dutton v. Morrison, 17 Ves. 207. And it has ever since remained the settled law of England, applicable, not simply to proceedings in bankruptcy, but as a ^general rule of equity, in the distribution of the assets of insolvents.
The supposition that this rule arose from any provision of the statutes concerning bankruptcy, in England, is a mistake; it washing and well settled as a rule of equity before any statute was enacted touching this subject. It does not aj>pear to have been sanctioned by any positive enactment until the statute of 6 Geo. IV., c. 16, sec. 16.
It is not a little remarkable that this rale of equity, so long settled and acted on in England, should have encountered so much opposition as it has in the courts of the several states in this country.
In Pennsylvania, the yule was discarded, by a majority of the court, in the case of Bell v. Newman, 5 Serg. & R. 78, decided in. *168 1819. And the rule adopted in that case was, that where a surviving partner dies indebted to partnership and also to individual creditors, and leaving joint assets and also separate assets, the separate creditors should receive as much out of the separate property as the joint creditors could receive from the separate portion or share of such partner in the joint property; and that, then, the the balance of the separate property should be divided pro rata among both classes of creditors. This was placed partly on the ground of equity, and partly on the ground of a statute directing equality of distribution of the assets of deceased persons. Judge Gibson, however, dissented, insisting forcibly on the rule adopted in England as a general principle founded in equity.
And it has been insisted that this case did not strictly fall within the application of the principle, inasmuch as the estate to be distributed in that case was the estate of a surviving partner, against which the claims of the joint creditors were as purely legal as those of the separate creditors. And Chief Justice Tilghman remarked, in the opinion in the case, that “ no rule was intended to be laid down which may affect cases differently circumstanced.”
The case of Sperry’s estate, 1 Ashmead, did not directly affect the question, inasmuch as it came fully within the exception that where there is no joint fund, and no solvent partner, the separate *and joint creditors should be paid ratably out of the separate estate. The question was again brought to the attention of the court in that state, in Walker v. Eyth, 25 Penn. St. 216, where the court express the opinion that it is a rule of equity: “that, where there are'partnership and separate creditors, each estate should be applied exclusively to the payment of its own creditors, the joint estate to the joint creditors, and the separate estate to the separate creditors.” But the question was not directly decided, the decision of the case being put upon another ground. So that the general principle, in a case proper for its application, is said to remain still an open question in Pennsylvania. 1 Amer. Law Cases, 483.
In Yirginia the question was presented in 1848, in the case of Morris’ Adm’r v. Morris’ Adm’r, 4 Grattan, 293, and was elaborately discussed on both sides, but the court was equally divided on the question of the adoption of the rule as a general rule of equity, and the decision of the case was put on other grounds.
In New Jersey, in the case of Wisham v. Lippincott, 1 Stockton’s *169 Ch. 353, the rule was doubted as a general principle of equity, ^although not decided.
In Vermont, in the case of Bardwell v. Perry et al., 19 Vt. 292, rthe rule was discarded as a principle of equity, with this qualification, that the separate creditors could require, in equity, that the joint creditors should first exhaust the partnership funds before -coming in with the separate creditors of a partner for a pro rata ■distribution out of his separate estate.
It does not appear that the doctrine of the English courts on ■this subject was ever adopted as a rule of equity by the courts in Massachusetts; but it is said that a statute was enacted in that state, in 1838, providing, as a rule for the distribution of insolvents’ ■estates, that the net proceeds of the separate estate shall go to the separate creditors, and that of the partnership estate to the joint •creditors.
The rule appears to have been discarded in Connecticut, in the ■case of Camp v. Grant et al., 21 Conn. 41; and also in Mississippi, in the case of Dahlgran, Adm’r, v. Duncan, 7 Sm. *& Mar. 280; but adopted in Alabama, in Bridge v. McCullough, 27 Ala. 661.
In New York, it has been adjudged, that “the rule of equity was uniform and stringent, that the partnership property of a firm shall all be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm; and that the creditors of the latter are to be first paid out of the separate effects of then* debtor, before the partnership creditors can claim anything therefrom.” Jackson v. Cornell, 1 Sandf. Ch. 348. The history of the English rule was somewhat reviewed by Chancellor Kent, in Murray v. Murray, 5 Johns. Ch. 60, and, upon full consideration, adopted as a rule of equity, by Chancellor Walworth, in Wilder v. Keeler, 3 Paige, 517; Payne v. Matthews, 6 Paige, 19; Hutchinson v. Smith, 7 Ib. 26.
The same doctrine was adopted by Chancellor Desaussure, in South Carolina, as early as 1811, in Woddrop v. Ward, 3 Des. Eq. 203; and also by the Supreme Court of New Hampshire, in Jarvis v. Brooks, 3 Foster, 136.
The subject was very fully reviewed in the court of appeals of Maryland, in McCulloh v. Dashiell’s Adm’r, 1 Harr. & Gill, 96, wherein it was settled, in that state, that in equity, the individual creditors of a partner were entitled to a preference over the joint creditors in the distribution of the separate estate of their debtor.
*170 • And the same doctrine was settled hy the Supreme Court of the United States, on full consideration, in- Murrill et al. v. Neill et al., 8 How. 414.
And it has been laid down, generally, by the elementary writers, both in England and in this country, as a settled rule of equity. Story, in his work on partnership, chap. 15, sections 365, 366, says:
“ This principle of equity jurisprudence, that the joint creditors shall be entitled to a priority of payment out of the joint effects, and the separate creditors to a like priority out of the separate effects, before the other class of creditors shall be entitled to any portion of the surplus, is not, perhaps, under all its aspects, so purely artificial, as it has sometimes been suggested to be; at least, it has been often relied upon, as the dictate of natural justice.”
It is true, the same author, in section 377, of his same work, qualifies this opinion as follows:
*“ ‘ This rule, although now firmly estalished,’ ‘ stands as much, if not more, upon the general ground of authority, and the maxim, stare decisis, than upon the ground of any equitable reasoning,’ and further, that1 after the repeated doubts which have been expressed upon the subject by the most eminent judges, it is not, perhaps, too much to say, that it rests on a foundation as questionable and as unsatisfactory as any rule in the whole system of our jurisprudence,’ ”
And he adds':
“ Such as it is, however, it is for the public repose that it should be left undisturbed, as it may not be easy to substitute any other rule, which would uniformly work with perfect equality and equity in the mass of intricate transactions connected with commercial operations.”
Kent, in his Commentaries, 3 vol. p. 65, says:
“ The joint creditors have the primary claim upon the joint fund, in the distribution of the assets of bankrupts or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place. • So far as partnership property has been acquired by means of partnership debts, those debts have, in equity, a priority of claim to be discharged; and the separate creditors are only entitled in equity to seek payment from the surplus of the *171 joint fund after satisfaction of the joint debts. The equity .of the rule, on the other hand, equally requires that the joint creditors should only la ok to the surplus of the separate estates of the partners, afterpayment of the separate debts. It was a principle of the Eoman law, and it has been acknowledged in the equity jurisprudence of Spain, England, and the United States, that partnership debts must be paid out of the partnership estate, and private and separate debts out of the private and separate estate of the individual partner. If the partnership creditors can not obtain payment out of the partnership estate, they can not in equity resort to the private and separate estate, until private and separate creditors are satisfied; nor have the creditors of the individual partners any claim upon the partnership property, until all the partnership creditors are satisfied.”
It is argued, however, that this doctrine was overruled in Ohio, in the case of Grosvenor v. Austin, 6 Ohio, 104. It is true, that the reasoning of the court in the opinion, is to that effect; but the case decided falls within one of the acknowledged exceptions to the rule. Where the partnership has become insolvent, and there are no partnership assets for distribution, and no living solvent partner, it has been uniformly conceded, that the principle of the rule does not apply. The case of G-rosvenor v. Austin, was a bill in equity by the creditors of the firm of Seymour Austin & Calvin Austin, for a distributive share with the individual creditors of Sey mour Austin out of the assets of his separate estate in the hands of his administrator. There were no partnership assets, and both parties had died insolvent. This was not a case, therefore, for the application of the principle under consideration. And Judge Lane, in delivering the opinion, says, as to this rule: “ This court are of opinion that if any such rule exist, it must have been of frequent application, and thus have become familiar to the profession. Xet no case is found in the books, except the one in 9 Vesey, and the South Carolina case, that touches such a doctrine, unless cases founded on the statutes of bankruptcy. A claim so novel, in a case necessarily of such common occurrence, must be listened to with caution amounting to jealousy,!’ etc. Touching the subject of this obiter opinion, the following remarks of the Supreme Court of the United States, in Murrill v. Neill, are in point:
“ The rule in equity governing the administration of insolvent partnerships is one of familiar acceptation and practice ; it is one which will be found to have been in practice in this country from the beginning of our judicial history, and to have been generally, *172 •if not universally, received. This rule, with one or two eccentric variations in the English practice, which may be noted hereafter, is believed to be identical with that prevailing in England, and is ■this: that partnership creditors shall, in the first instance, be satis•■fied from the partnership estate ; and separate or private creditors ■of the individual partners from the separate and private estate of the partners with whom they have made private and individual contracts; and that the private and individual property of the partners shall not be applied in extinguishment of partnership ••debts, until the separate and individual creditors of the respective partners shall be paid. The reason and foundation of this rule, or its equality and fairness, the court is not called on to justify. "Were -these less obvious than they are, it were enough to show the early ■adoption and general prevalence of this rule, to stay the hand of innovation at this day; at least, under any motive less strong than •the most urgent propriety.”
It has been argued that the statute in this state, relative to *the equal distribution of the estates of deceased persons, .•and also the statute providing that all assignments of property in •contemplation of insolvency, giving preferences to creditors, had established, in this state, a policy inconsistent with the rule in •question. These statutes were certainly never intended to have •such an effect. The equality required by them is subordinate to -the settled equities and priorities of different grades and classes of ■creditors. It was manifestly not the design of these statutes to •change the nature of partnership contracts, and abrogate the pref•erence of partnership creditors in the distribution of the partner■ship assets. And as this was not done, the rule of equality adopted in equity, requires the corresponding preference to be given to the ■individual creditors of each partner in his separate estate. '
The remaining matter for determination, in this case, involves the inquiry, whether, in case of an indebtedness for money lent to -the partnership by a partner who afterward becomes insolvent, the .separate creditors of the latter shall be entitled therefor to a pro .rata distribution with the partnership creditors, out of the joint fund. It is claimed that the liability of the firm to a partner for money loaned is a partnership debt, and that the individual ci editors of that partner are, in equity, entitled to an equal distribution therefor, out of the partnership property. On the other hand, it is claimed, that as each partner is individually liable for the debts *173 of the firm, and as no partner can be allowed to participate with1* his own creditors in the distribution of a fund, the separate creditors of a partner, as they can only claim through the rights of their debtor, can not be allowed such participation with the joint creditors.
It was at onetime held to be the law, on the authority of adjudications by Lord Talbot and Lord Hardwicke, that if a partner has-loaned money to the partnership, or the partnership has loaned money to the separate estate of one of the partners, according to-the equitable rule of distribution of the assets after insolvency, in the former case, the separate creditors of the partner would be entitled to an equal share out of the joint assets to ^the extent of the debt created for the money lent; and that, in the latter case, the partnership creditors would be entitled to payment to the same extent, out of the individual estate of the partner. Ex parte Hunter, 1 Atk. 223; Story on Part., sec. 390. But this doctrine has long since been overruled ; and the contrary appears now to be well settled. In Ex parte Lodge, 1 Ves. Jr. 166, Lord Thurlow held, that the assignees on behalf of the joint estate could not be entitled to distribution out of the separate estate of Lodge, for money which he had abstracted from the partnership, unless he had taken it with a fraudulent intent to augment his separate estate. And in Ex parte Harris (2 Ves. & Bea. 210, 212), Lord Eldon said : 11 There has long been an end of the law which prevailed in the time of Lord Hardwicke, whose opinion appears to have been, that if the joint estate lent money to the separate estate of one partner, or if one partner lent to the joint estate, proof might be made by the one or the other, in each case. That has been put an end to, among other principles, upon this certainly, that a partner can not come in competition with separate creditors of his own, nor as to the joint estate with the joint creditors. The consequence is, that if one partner lends £1,000 to the partnership, and they become insolvent in a week, he can not be a creditor of the partnership, though the money was supplied to the joint estate ; so, if the partnership lends to an individual partner, there can be no proof for the joint against the separate estate; that is, in each case no proof to affect the creditors, though the individual partners may certainly have the right against each other.”
This doctrine proceeds upon the principle, that, in the distribution of the assets of insolvents, the equities of the creditors, whether *174 joint or separate, must be worked out through the medium of th6 ■partners; that creditors can only step into the shoes of their immediate debtors in reaching their effects where there are conflicting ■claims; and that, inasmuch as an individual partner could not him-' self come in and compete with the partnership creditors, who are in fact his own creditors, in the distribution of the fund, and thereby prejudice those who were not only creditors of the partnership but also of himself; therefore the ^separate creditors of a partner ■could not enforce any claim to a distributive share of the joint effects against the partnership creditors, which could not have been ■enforced by the partner himself for his own benefit. Story on Partnership, sec. 390. The rule, however, that these several funds .are to be thus administered as they stood at the time of the insolvency, is to be received with this important limitation, that it does not apply in case either where the effects obtained, creating the •debt, were taken from the separate estate to augment the joint estate, or from the joint estate to augment the separate estate, fraudulently, or under circumstances from which fraud may be inferred, ■or under which it would be implied.
In the case before us, however, it is not pretended that the firm ■obtained the borrowed money from Murray improperly. The ■separate creditors of Murray, therefore, are not, on account of this ■claim for money lent by Murray to the firm, entitled to participate with the partnership creditors in the distribution of the joint effects.
Judgment of the common pleas reversed; and ordered that the separate effects of Peter Murray be distributed pro rata first among his individual creditors, before any application thereof be made to the payment of the partnership debts of Dever & Murray; and that the partnership effects be applied first to the payment of the partnership debts, irrespective of the claim of the partner, Peter Murray, for money loaned by him to the firm.
Swan, Brinkerhopp, Scott, and Sutlifp, JJ., concurred.