LAMOILLE VALLEY R. R. COMPANY, AND ESSEX COUNTY R. R. COMPANY *v.* FREEMAN BIXBY AND MONTPELIER & ST. JOHNSBURY R. R. COMPANY.

[IN CHANCERY.]

*Railroad.   Partnership.   Creditors.   Cross-Bill.   Levy on Engine.*

The defendant railroad and the orators under a partnership arrangement were operating the three lines of road.   Defendant B. obtained a judgment against the defendant rai'road for injuries received through its neglect, not knowing of the partnership.   He levied his execution on an engine, tender and baggage car, owned by the three companies, and the same were sold t) his agent, L. ; and he had also levied upon another engine owned by the same companies, and had advertised it for sale, when he was enjoined.   A bill having been brought, setting up the superior rights of partnership credi*ors, *Held*,

1. Although the rights of partnership creditors, as a rule in equity, are superior to those of the individual creditors, yet the court will not enjoin, where equities are equal ; or, where, as in this case, it does not clearly appear by allegation or proof, that the partnership indebtedness *existed at the time the property was seized on execution ;* or, especially, under the special provisions of our stat-

ute. R. L. s. 3443, whereby a passenger, injured through the negligence of a railroad company, has a right in attaching cars, engines, &c., superior to the general equity of the partners.

2. *Bill in the nature of a cross-bill.* It is decreed that the orator in the cross-bill, defendant B., obtained a va'id lien on *one third* of the engine levied on ;

3. But no decree could be made as to the property sold to L., unless he were made a party ; and the validity of that sale would seem wholly a matter of law.

4. The priority of right or partnership creditors exists only in equity, not in law.

5. R. L. s. 3443, property held for injuries on railroad, construed.

BILL in Chancery. Heard on bill, answer and testimony, December Term, 1877, Ross, Chancellor, Caledonia County. Decree *pro forma* for the orators. The bill alleged as to the partnership indebtedness :

" Your orators further show that prior to the building of either of said roads, to wit : on the      day of           a joint or partnership arrangement was entered into by the said three corporations to build and equip and run their several roads under one management, and to raise money for that purpose upon their joint credit, and by joint mortgages of their several roads and property, and each of said companies was to pay its proportion of the monies so raised, as should be expended upon its road, and said several roads were built, and have been run under said arrangement, and the same is still in full force between the said companies.

And your orators show, that of the monies so raised upon the joint credit of said companies, and by* mortgage of the several roads of each of said companies, a much larger proportion was expended upon the Montpelier and St..Johnsbury Company's road, than either of the others, so that upon a fair adjustment of the accounts between the companies, the said Montpelier and St. Johnsbury Companies, for the monies so raised and expended there would be due to the orator companies from the said Montpelier and St. Johnsbury a large sum of money, as your orators believe of more than fifty thousand dollars.

And your orators further show, that in the purchase of equipments, furniture, and supplies for the use and operation of said roads under said joint or partnership management, and for expenses of operating the same, a large amount of joint or partnership debts have been created, and are now outstanding, largely exceeding in amount the value of all the personal estate and property of every kind held by said companies, and the several roads of the said three companies are so heavily encumbered by mortgages as not to be available for that purpose provided they were liable therefor. And your orators insist that both in law and

equity all the joint personal property and assets of the said road acquired under their joint or partnership arrangement are liable and held for the payment of said joint or partnership debts before it can be reached or applied to the payment of a liability of either of said companies alone, and that not only the joint or partnership creditors have a right to have the joint property so applied, but that each party to such joint or partnership arrangement has an equitable right to have such application made and to object to and resist the division of any of such joint or partnership property to the payment of the several debts of either of said companies." . . .

" And your orators further allege that all the rolling stock, equipment, furniture, and personal property of all kinds upon the said roads, does not exceed in value sixty thousand dollars, and that the said three companies jointly owe debts incurred for service rendered, and material furnished for the purpose of keeping the same in repair and running the same, to an amount very largely exceeding the value of all the rolling stock, furniture, equipment, and personal property on said roads, and they believe to the amount of three hundred thousand dollars, and that they have no other property, or means of paying the same, and that each of said creditors has at least as much a lien, and as much equitable claim to payment of his debt out of such property, as said defendant, and that if defendant has any right whatever, it is only for his *pro rata* share therein upon a proper marshaling of all such assets."

The defendant Bixby had sold in part satisfaction of his execution the engine " Swanton," tender and passenger car attached, to J. P. Lamson. The prayer of the cross-bill was:

" And your orator prays that the title to the said engine and tender called the ' Swanton ' and passenger car attached, may be settled and the title confirmed to your orator, that your orator's judgment against the Montpelier and St. Johnsbury railroad company may be decreed a first lien upon the rolling stock owned by the said three corporations, and that said lien be enforced by a sale of said rolling stock or so much thereof as may be necessary for the payment of said judgment, and in case this Honorable Court shall decide that your orator was only entitled to have one undivided third part of said rolling stock sold on said execution, then your orator prays that in default of the payment of said judgment, that said third part may be designated and set apart and sold, or enough thereof sold to satisfy said judgment," and for further relief.

*S. C. Shurtleff* and *J..P. Lamson,* for the defendants.

The other partners cannot maintain this bill, as they are insolvent, as shown by the proof, and there is no assurance that they would apply it to pay the other partnership debts. The bill does not allege, and the proof does not show, that at the time of the attachment of the engine and car in controversy that the concern was insolvent. The bill must fail for this cause. *Willis, Admr.* v. *Freeman,* 35 Vt. 44; *Russ, Admr.* v. *Fay,* 29 Vt. 381. .

The defendant, Bixby; had the right at law to attach this property. *Reed & Root* v. *Shepardson,* 2 Vt. 120 ; *Bardwell* v. *Perry,* 19 Vt. 292. But on the merits the orators must fail. The bill does not allege, nor does the evidence show, but that every dollar of the joint or partnership indebtedness now outstanding has been contracted since the attachment of this property by the defendant, Bixby. It is for the orators to show it was outstanding at that time, and not for the defendant to show it was not.

The statute, c. 28, s. 65, (Gen. St.) gave the defendant power to attach.

*Poland,* for the orators.

The property levied upon by the defendant, Bixby, was partnership property, bought and paid for by partnership funds. It is conceded that the partnership debts exceeded the value of all the property or assets.

In such case the law is perfectly settled that a creditor of one member of the firm cannot levy upon any specific portion of the partnership property and apply it to the payment of his debt. If he would reach the parties' interest in the partnership for the satisfaction of his private debt, he must take his interest in the whole after the partnership debts are all paid. The partnership property must first be applied to pay the partnership debts, and there is no interest that an individual partner or his creditor can take till this has been done. Parsons Partnership, c. 10 ; *Washburn* v. *Bellows Falls Bank,* 19 Vt. 278.

The defendant seeks to avoid the effect of these plain and obvious principles in several ways. He says his claim was one for which the partnership was liable, and he might have sued and

obtained judgment against all. If this were so, it does not seem clear how it can help the defendant.

Can the property of A. be taken and sold on an execution against B., because A. was holden for the same debt, and might have been sued jointly with B. ?

But the cross-bill is founded on an entirely new and different claim from the original bill, and there is no connection between the two; and it is clearly no case for a cross-bill, which is only one mode of defence. *Slason* v. *Wright,* 14 Vt. 208; *Rutland* v. *Page,* 24 Vt. 481.

The opinion of the court was delivered by

REDFIELD, J. This bill is founded upon the claim of the superior rights of the creditors of a partnership in its property to the individual creditors of one member of the firm.

The bill alleges that the line of railroads now known as the " St. Johnsbury and Lake Champlain Railroad," consisted of three corporations, viz., the two made orators in this bill, and the Montpelier and St. Johnsbury Railroad Company; that while operated by the three roads jointly under a written contract, the defendant Bixby recovered judgment for a personal injury against the latter railroad company while a passenger on the line of its road, occasioned by want of care in operating said railroad; and has levied an execution founded on such judgment upon a locomotive, tender and baggage car which was the property of the three railroad companies. Bixby was enjoined and restrained from selling the property by the chancellor.

The defendant Bixby answers, and brings a cross-bill denying the equity of the orators, and claiming a superior right under his levy. Further details in the pleadings or proof do not seem important in the determination of the case.

I. It is settled law that the partnership creditors have in equity a superior right to the property of the firm, to insure the payment of its debts over the attaching creditor of one member of the partnership. And this is based upon the supposed lien which the partners have among themselves upon the assets of the

firm. But the embarrassment in this case arises upon the application of these principles to the case in hand.

The principle invoked obtains only in equity, and at law the defendant Bixby might attach and sell one *third* the property in question, without regard to the equities of others. *Bardwell* v. *Perry*, 19 Vt. 292 ; *Reed* v. *Shepardson,* 2 Vt. 120.

II. It does not clearly appear by allegation or proof that the partnership indebtedness existed at the time the property was seized on execution ; if not, the bill is without foundation. *Bardwell* v. *Perry, supra.* In *Brewster* v. *Hammet,* 4 Conn. 540, where it was shown that the partnership had become insolvent, and its property by foreclosure or otherwise had gone out of its hands, the court refused such application on the ground that it felt no assurance that the partnership creditor would be benefitted. These corporations have undergone many changes and transformations. The joint mortgages upon their railways and property have been foreclosed, and titles to the same have passed to others under decrees of the court; and now the whole line of these railroads is operated under a different name ; and how far the claims of creditors have been satisfied by their decrees of court, is not known. In this condition of the property there would seem no equitable ground for interfering with the legal rights of Bixby under his levy. Yet we should hesitate to dispose of this case upon these grounds without a more careful examination of the evidence and authority.

But the statute of 1855, which is section 3443 of the R. L. of this State, declares that " when the property or person of another is injured through the default of a railroad corporation, its agents or employes, the cars, engines, and other property, which at the time of such injury are subject to use in the running and management of such road, and which at any time have been owned by said corporation, shall be held to be the property of such corporation for the purpose of furnishing indemnity for such injury ; and may be attached and levied upon as such at the suit of the party injured." The defendant Bixby obtained judgment against the Montpelier and St. Johnsbury Railroad Company for a per-

Railroad Co. *v.* Bixby.

sonal injury suffered while a passenger on said road, through the alleged default of said corporation. The alleged default of the corporation and the damages occasioned by the injury to Bixby, are conclusively established by the judgment. It is now proved that all the engines and cars were owned and the trains run by the three corporations, under a written contract between them, but this was unknown to Bixby until after he obtained his judgment. He found the franchise granted to this corporation being used in a train of cars on a track in the line of its road. He had a right to presume that all this was done by it in the exercise of its lawful franchise. And every participator in the act of running the train of cars is presumed to have knowledge of the law. It is not important, as we think, whether each corporation runs the train over its own section of the line, or, whether by mutual contract they jointly run the whole line; the property attached to the extent of defendant corporations' ownership, is by the statute made subject to attachment to respond and " indemnify " the passenger for the injury suffered. And such passenger has, by this statute, a special right in his attachment of the engine and car superior to the general equity of the partners in the partnership property. If the equities were equal, the defendant having attached the property should be permitted to pursue it. *Bardwell* v. *Perry, supra;* Ex-parte *Ruffin,* 6 Ves.

As to the cross-bill. The sale of the engine " Swanton," tender and passenger car attached, which were bid in and purchased by Lamson, is a matter entirely foreign to the subject-matter of the original bill. Lamson, though he acted in the purchase as agent for Bixby, was vested with the legal title and no decree could be made affecting *that* property unless he were made party; besides, the validity of that sale would seem wholly a matter of law. The introduction into a cross-bill of a distinct and independent subject of controversy, and not within the scope of the original bill, is incongruous and not allowable. This is not strictly a cross-bill, but a bill in the nature of a cross-bill introducing additional parties; and the defendant Bixby seeks not only to defend against the orator's bill but to obtain affirmative relief.

The defendant levied his execution upon the property; the
16

orator by his bill seeks to release the property from the defend-ant's lien created by the levy, and has enjoined proceedings to per-fect and enforce it.    By the mutations of title incident to fore-closure, receivership and decrees of court, intervening claims to the property levied upon are now supposed to subsist ; and we think the rights and interests of the parties, as we find them, so far as practicable, should be made effectual.

It is therefore ordered and decreed that the orator in the cross-bill, Bixby, obtained by his levy of the execution, in his favor against the Montpelier and St. Johnsbury Railroad Company, a valid lien upon *one third* of the engine called Hyde Park, tender and baggage car attached thereto ; and such lien is declared to continue and subsist.    The decree of the court below is reversed and cause remanded, with directions to enter a decree for the orator in the cross-bill, Bixby, for the amount of the execution levied upon such property with interest ; and if the parties do not agree, the matter will be committed to a master to report the value of such property levied upon at the time of the injunction in this cause, viz. :   the 16th of October, 1877 ; and the amount of *one third* of such valuation with interest therein from the latter date to the present time, which sum to be paid to the clerk of Caledonia county court for the benefit of said Bixby within sixty days from the final decree in this cause, and in default, execution shall issue on this decree, and the property so levied upon sold by the sheriff of said county to satisfy said one third valuation of said property with interest and the costs of sale.    And the orators in the cross-bill are to recover their costs.

Decree reversed and cause remanded with a mandate.