# Shepherd's Appeal.

1. An annuitant, like any other creditor, may have several securities, some of which may be partial, and others entire, and one or more of which may be resorted to, to obtain satisfaction.

2. After twenty years has elapsed, from the time money has become due on a specialty, the law will, in the absence of explanatory circumstances, presume it paid.

3. A mortgagor of two distinct pieces of property, who sells and conveys one of them, and takes a bond from his purchaser, for the application of the purchase-money to the mortgage debt, stands as a surety, or at least as a co-debtor to a common creditor, where the release of one is the discharge of both.

APPEAL from the decree of the Orphans' Court of *Philadelphia.*

*Mallery*, for appellant.

———, for appellee.

The opinion of the court was delivered April 4, 1854, by

WOODWARD, J.—The widow's annuity was $130 per annum, secured by the bond and mortgage of 17th August, 1836 ; and unpaid arrears of it having accumulated to the sum of $1266.20, it is objected that this amount could not be allowed out of the fund in court, because it exceeded the penalty of the bond, which was $500. If the claim here were on the bond only, there might be reason for the objection, but the mortgage was a distinct and substantive security for the annuity, and the claim is under that. An annuitant, like any other creditor, may have several securities, some of which may be partial, and others entire, and one or more of which may be resorted to, to obtain satisfaction. The mortgage in this case was not limited to the penalty contained in the bond, but that given to secure the annuity, and whatever was due on that, was properly adjudged to the mortgagee.

Nor is the second error sustained. Granting that there were circumstances in proof before the auditor, which, in connection with the lapse of time, might raise a presumption that the bond of 10th June, 1837, had been paid, it is a sufficient answer, that they did not persuade the auditor, and no issue was asked for, to review his conclusions of fact. We treat an auditor's report as a special verdict; and if a party is not satisfied with his finding on the facts, the proper course is to obtain an issue to re-try the facts in the court below. When it comes up here unquestioned, it must be a flagrant mistake that will induce us

to disturb it.   And whether the bond was paid or not, was a question of fact.   After twenty years had elapsed, from the time when money becomes due on a specialty, the law will, in the absence of explanatory circumstances, presume it paid; but when any period short of that is relied on, in connection with circumstances, the presumption becomes one of fact, and is for the jury to judge of.   Here the bond was only twelve years overdue, and it ought to require more persuasive circumstances than were submitted to the auditor, to justify any jury in finding such a bond paid.   Perhaps it was a consciousness of this which induced the acquiescence in the finding of the auditor; but whether acquiescence were meant or not, it is conclusive against the error assigned.

The third error presents a question which depends on a peculiar state of facts.   On the 14th July, 1837, John P. Monnier, the decedent, made a bond and mortgage to Napoleon Augustus Lallon, and Eliza, his wife, for a real debt of $6000, with interest.   This mortgage included the premises, from the sale of which the fund in court arises, and also a house and lot in Hamilton village, which Monnier subsequently sold to Rudolph H. Evans, who gave him a judgment bond for the purchase-money, dated May 5, 1846, for $4000, payable on or before the 14th July, 1850, with interest at five per cent., payable semi-annually. This bond contained an alternative condition, the words of which are material, as the question turns on their construction: " conditioned for the payment of $4000, on or before the 14th July, 1850, with interest thereon, payable semi-annually, at the rate of five per cent. per annum ; or if I, the said Evans, my heirs, executors, or administrators, or any of them, shall and do, on or before the said last-mentioned date, well and truly pay, or cause to be paid, the said sum of $4000, unto Augustus Lallon, his executors, administrators, or assigns, on account, or towards the satisfaction of a certain mortgage for $6000, now held by him, the said Lallon, upon, inter·alia, a house and lot in Hamilton village, conveyed to me by the said Monnier, of which the said $4000 are part of the purchase-money, without fraud," &c.

December 29, 1846, judgment was entered on this bond.

September 19, 1850, Lallon and wife executed a release of the Hamilton village property, from the lien of the $6000 mortgage, to James G. Clark, to whom Evans had sold the same, receiving from Clark a mortgage on the same property, for $3000, and the sum of $1000 in money.

· The five per cent. interest, on the bond of 5th May, 1846, had not been paid, and it would seem not to have been demanded by Lallon, when he released the lien of his mortgage.   He now claims satisfaction of the balance of his $6000 mortgage, out of the fund in court, deducting only the principal of the $4000

bond, without accounting for any of the accumulated interest. On the part of the appellants, it is insisted that his claim on the fund for distribution, should be diminished by the amount of that interest; that is, that from his $6000 mortgage should be deducted, not only the $4000 bond, but the interest on it. Is he liable to account for that interest? The auditors decided that he was not, for three reasons: 1st. That he and his wife were not parties to the bond. 2d. That the condition does not provide for the payment of the interest to them; and 3d. That the judgment still remains unsatisfied of record.

To treat these reasons in their inverse order, it is sufficient to say, in answer to the 3d, that if Lallon and wife have to account for the interest, that judgment will belong to them, and whatever remedies may be had under it, will enure to their benefit. The existence of the judgment does not settle the question of their liability.

We do not agree with the auditor, that the condition of the bond, did not provide for the payment of the interest to Lallon and wife. It is true, that in that part of the condition which refers to their mortgage, the sum of $4000 merely is mentioned, and nothing is said about the interest on it, but it is called the "*said sum of* $4000," and it is to be paid "well and truly;" and if we recur to the first part of the condition, to find what the *said* sum was, we read, $4000, *with interest thereon, payable semi-annually, at the rate of five per cent. per annum.* The interest was not mentioned, when the alternative payment to Lallon was provided for, because that was not to be due until the 14th of July, 1850, whereas, the interest was to become due every six months, and payment of it was doubtless anticipated, when the bond was made. But on the 19th of September, 1850, the interest not having been paid, the bond obliged Evans, or his vendee, Clark, to pay either to Monnier, or to the mortgagees, $4000, and the interest at five per cent. Nothing less than this would satisfy the judgment. An alternative, to pay one or the other of two creditors, offered to a debtor, does not alter the amount of the debt to be paid. If it was payable with interest, to one of the specified creditors, it would be so to the other. That Monnier would have been entitled to his interest, as well as principal, no one will question. His appointee, then, was entitled to demand it, and the terre-tenant was bound to pay it.

And now we are prepared to consider the only other reason assigned by the auditor, that Lallon and wife were not parties to the bond.

True, they were not parties to the bond originally, but they recognized its condition, and undertook to settle it, and, by releasing the lien of their mortgage, did an act highly prejudicial to Monnier.

[Shepherd's Appeal.]

A mortgagor of two distinct pieces of property, who sells and conveys one of them, and takes a bond from his purchaser for the application of the purchase-money to the mortgage debt, stands as a surety, or, at the least, as a co-debtor to a common creditor, where the release of one is the discharge of both. Lallon and wife might have enforced their mortgage against both properties, and failing to obtain satisfaction from one, might have sought it from the other. They were not affected by the arrangement between Monnier and Evans, except as they undertook to execute it. But when they released to the terre-tenant one of the mortgaged properties, for a less proportion of their debt, than that property was appointed to pay, they threw on the other part of the mortgaged premises, a greater burden than the mortgagor had ever consented to impose. Monnier and Evans had agreed, that the Hamilton village property should pay $4000, and five per cent. interest, towards satisfying Lallon and wife's mortgage of $6000. The mortgage was a security, not only to Lallon and wife for the whole $6000, but to Monnier for the $4000, and interest; and if the mortgagees had obtained satisfaction out of the Fourth street property, equity would have compelled them to hold the mortgage for Monnier's use, till he was paid the stipulated price of the Hamilton village property. This security the mortgagees released without his consent, and greatly to the prejudice of his estate, if their present demand be sustained.

They may have mistaken the legal effect of the condition, in the bond of Evans to Monnier, but they were bound to know what it meant, when they undertook to satisfy it. They may have been ignorant that the interest was unpaid, but they could not have known that it was paid, for the fact was not so, and on this point they could have informed themselves. They had an ample remedy by proceeding at law on their mortgage, regardless of the arrangements between Monnier and his vendee. But when of their own motion, and without Monnier's knowledge or consent, they discharged his vendee for a less sum than he had undertaken to pay to them, for a less sum than Monnier had fixed that property to yield to the mortgage debt, and for a less sum than they were entitled to demand out of it, reason and equity seem to dictate, that they should have no further claim on Monnier, for any part of the moneys due from that vendee, and that if remedies are to be enforced against him, for what he ought to have paid, but has not, they, and not Monnier's representatives, should be compelled to enforce them.

And now, to wit, April 4, 1854, this cause came on to be considered upon the errors assigned, and after argument by counsel, it is ordered and decreed, that the judgment of the Orphans' Court be reversed and set aside, so far as regards the

sum of $2065.10, allowed to Augustus Lallon and Eliza his wife, and that there be paid to them, out of the moneys in court, whatever may remain due upon their mortgage, of July 14, 1837, after deducting the $4000, mentioned in the bond of Evans to Monnier, dated May 5, 1846, with interest thereon, at the rate of five per cent. per annum, and as to the rest of the decree of the Orphans' Court, that the same be affirmed. It is further decreed, that the administrator of John P. Monnier, assign and transfer the judgment, entered in his name against Rudolph H. Evans, in the District Court for the city and county of Philadelphia, on the 29th day of December, 1846, on a bond, dated the 5th of May, 1846, to Augustus Lallon and Eliza his wife, to be collected at their risk, and for their use.