## DEWEY *v.* WILLIAMS.

A forfeiture of a grant can only be taken advantage of by the grantor, and cannot be inquired into collaterally.

Where, from the language used in a grant of a water-power or privilege, it is left doubtful whether the intention was to limit the purposes for which the water is to be used, or only the quantity to be used, the court will favor the latter construction.

A grant of a sufficient quantity of water to carry two runs of stones in a certain grist-mill, limits only the quantity of water to be used; but that quantity may be used for any purpose.

THIS was an action on the case, in which the plaintiff complained that the defendant, by the use of water at his foundry, had abridged the plaintiff's right to water to operate and carry his grist-mill.

It appeared that prior to March, 1792, the town of Lancaster was possessed of the premises and water-privileges on Israel's river, situated above Stockwell's bridge, which premises and water-power on the north side of the river are now occupied by the plaintiff's grist-mill, the defend-

ant's foundry, and a saw-mill of S. & W. M. Rines; and the part of the premises on the south side of the river is occupied by O. E. Freeman and Harvey Adams and others, with water-power for various purposes.    May 7, 1792, the town of Lancaster gave to Emmons Stockwell a lease, in accordance with a vote of the town, passed at the annual March meeting that year, in which they remised and released to said Stockwell, his heirs and assigns, Israel's river, and the town lands on each side of said river, from Stockwell's bridge, up said river, as far as is necessary for building mills, &c., for and during the term of his keeping said mill in good repair, with good attendance, and providing that said Stockwell should build or cause to be built, on said Israel's river, a good saw-mill, on or before the first day of December, then next; also, within one year thereafter, should build or cause to be built a good grist-mill, with a good bolt; and within two years thereafter should build or cause to be built a good fulling-mill, complete; and that said Stockwell, his heirs and assigns, should saw logs, for the one half which the logs may make in boards or plank, for the inhabitants of said town of Lancaster, they delivering good mill-logs at said mill-yard.

May 8, 1792, said Stockwell conveyed by lease the same premises, with the same provisions, to Titus O. Brown, who built the saw-mill and grist-mill.    March 30, 1802, said Brown conveyed by quitclaim to Ephraim Stockwell and Liberty Stockwell the saw-mill and grist-mill, with the land and rights, and water-privileges and improvements, except " a reservation of the privilege of a fulling-mill, standing on or at the southerly end of the dam, said fulling-mill to have the privilege, at low-water, of the stream, next after the grist-mill."    April 3, 1811, Liberty Stockwell conveyed to Ephraim Stockwell his undivided half of the premises conveyed to them by Brown.    September 1, 1817, Ephraim Stockwell conveyed said grist-

mill and saw-mill and privileges to John McIntire. April 15, 1820, said McIntire conveyed by quitclaim the saw-mill, and land on which it stood, to Moses T. Hunt.

This deed conveys "all the water-privilege except a sufficient quantity of water for two runs of stones in said grist-mill, and except the right of maintaining the necessary flume for said grist-mill," &c. June 15, 1822, said McIntire conveyed to Ephraim Stockwell the grist-mill, and land on which it stood, together with so much of the water-privilege as he, the said McIntire, had reserved in his said deed to Hunt. August 16, 1830, said Stockwell conveyed to the plaintiff the grist-mill, and the land on which it stands, describing it by metes and bounds, and the water-privilege, as reserved in the deed of McIntire to Hunt, and giving said grist-mill the precedence of water over the other grants that had been made before, and over all rights reserved in said deed.

The defendant claims a right to water through various reserve conveyances from said Hunt's title to the saw-mill and saw-mill site, and also from a vote of the town of Lancaster and otherwise; but none of his title deeds were introduced, and the particulars of his title do not appear.

The plaintiff has, at great expense, twice rebuilt his mill, and now has a valuable grist-mill on the premises, on the site of the first grist-mill, containing three runs of stones, with such other apparatus and machines as modern improvements require.

The defendant contends that, under the foregoing conveyances, the plaintiff did not acquire a prior right to the water as he claims to have. The plaintiff claims such prior right, and contends that he should have the right to use as much water as it took to carry two runs of stones by his mill, as it was April 15, 1820, he also contending that he now has improved machinery and wheels which go with less water than was required by the old wheels and machinery to carry the two runs of stones.

It was agreed that the questions of law arising upon these facts should be transferred, that the law arising thereon might be settled; after which it was agreed that the case might be discharged, on motion of either party, and the cause tried by jury.

*Heywood,* for the plaintiff, cited *State* v. *Fourth N. H. Turnpike,* 15 N. H. 162; *Sewall's Falls Bridge* v. *Fisk,* 23 N. H. 171; *Tourtellet* v. *Phelps,* 4 Gray 374.

*G. C. Williams,* for the defendant.

SARGENT, J. It appears by the case that in May, 1792, the town of Lancaster owned the land and water-power above Stockwell's bridge, so called, on Israel's river, and in pursuance of the vote of the town the lease dated May 7, 1792, was given. This lease provides that the lessee, Emmons Stockwell, shall build or cause to be built on Israel's river, upon the premises granted, a good saw-mill, on or before the first day of December then next; also that he shall, within one year from the first day of December, then next, build or cause to be built a good grist-mill, with a bolt; and also provides that said Stockwell, his heirs and assigns, shall saw logs for the one half which the logs may make in boards or plank, for the inhabitants of Lancaster, they delivering good mill-logs at said mill-yard; and it appears that said Stockwell was to hold said granted rights and privileges so long as he should keep said mills in good repair, with good attendance.

Emmons Stockwell, the next day after the date of his lease, conveyed the same premises, rights and privileges, to Titus O. Brown, who, it would seem, built the saw-mill and grist-mill soon after, and we infer from the case that they have both been continued upon the same site ever since. The saw-mill and grist-mill passed by several conveyances to John McIntire, who, by quitclaim deed of April 15, 1820, conveyed the saw-mill and land on which

it stood to Moses T. Hunt. This deed conveys "all the water-privilege, except a sufficient quantity for two runs of stones in said grist-mill, and except the right of maintaining the necessary flume for said grist-mill." The plaintiff claims under said McIntire, and owns the grist-mill and the land upon which it stands, and so much of the water-privilege as was reserved by said McIntire in his deed to said Hunt, which was a sufficient quantity for two runs of stones in said grist-mill.

The defendant holds or claims to hold under some conveyance from said Hunt, who bought the saw-mill and the water-power, subject to the prior right of the plaintiff's grantor, McIntire, to draw first a sufficient quantity of water for two runs of stones in said grist-mill. It is contended that this apportionment, or the granting of a prior right to the grist-mill, is void; that no preference could thus be given by one holding under title from the town. But there is no evidence in the case tending to show, nor is there any complaint made, that the conditions and stipulations contained in the lease from the town, to be performed by the lessee and his assigns, have not all been performed. If the mills were both built within the time specified, and if the logs have been sawed at the halves for the inhabitants of Lancaster, when furnished in the mill-yard, and if said mills have been kept in good repair, with good attendance, then the grantee had a perfect right to the land and water-privilege granted, and could apportion it out as he pleased, among as many different persons and for as many different purposes and uses as he chose, and give to one grantee as much priority or preference in the manner of using the water, or in the amount to be used, as he saw fit, and no one, not even the town, could complain; and if each grantee had the full use and enjoyment of all the rights and privileges he purchased and paid for, he could not complain that some other one purchased and paid for and enjoyed a greater or better privilege than he;

and the power and right of the lessee from the town, thus to discriminate in his grants, cannot be doubted, so long as he is able to perform and does actually perform all his engagements with and duties toward the town.

But it is claimed that this apportionment of the water-power, and the preference thus given to the grist-mill, may prevent the saw-mill from doing the work required of it by the grant, and therefore that this apportionment is void. But suppose that this might be so, or suppose that such a result had already followed, and that, in consequence of the water having been so used as to give a sufficient quantity for two runs of stones at the grist-mill, the saw-mill had been unable to do the required work, and suppose that the grant was thereby forfeited, the town only could take advantage of such forfeiture. This defendant, who stands in the place of one who agreed to this apportionment, and took his rights subject to such prior grant, cannot object to it.

A forfeiture of a grant cannot be inquired into collaterally. *Com.* v. *Union Ins. Co.*, 5 Mass. 232; *Chester Glass Co.* v. *Dewey*, 16 Mass. 102; *Bear Camp River Co.* v. *Woodman*, 2 Gr. 404; *Rex* v. *Amory*, 2 T. R. 515; *Rex* v. *Pasmore*, 3 T. R. 244; *State* v. *Carr*, 5 N. H. 367; *Pierce* v. *Somersworth*, 10 N. H. 369; *State* v. *Fourth N. H. Turnpike*, 15 N. H. 162; *Sewall's Falls Bridge* v. *Fisk*, 23 N. H. 171.

The question also arises whether the reservation in McIntire's deed to Hunt, under which the plaintiff claims, limits the plaintiff in the use of the water and confines that use to a grist-mill, or to the running of two runs of stones in such grist mill, or only in the amount or quantity of water he might use. If the language used rendered it doubtful as to the meaning of the terms of the grant in this particular—whether the intent was to confine the use of the water to a grist-mill, and that alone, or whether it only referred to such mill, to indicate and meas-

ure the quantity of water to be used, and the amount of water-power to be conveyed—in such case the court would lean to the latter construction; because in general it is more beneficial to the grantee to allow a latitude of choice in the use he shall make of it, without being more onerous to the grantor, and therefore more consistent with the general rule of construction as applied to grants; and also because such construction is more favorable to the general interests of the community by encouraging enterprise and promoting public improvements;—it is better adapted to the growing and changing wants and the ever-varying pursuits of an active community. Such a construction is best suited to enable the grantee to adapt his works to the progress of improvement in the mechanic arts. A water-power which at one time and for a particular purpose is very valuable, might become worthless under a change of circumstances and a change of business, if it must always be confined to the same use. *Ashley* v. *Pease*, 18 Pick. 268; *Tourtellot* v. *Phelps*, 4 Gray 374; *Blanchard* v. *Baker*, 8 Gr. 253; *Johnson* v. *Rand*, 6 N. H. 22; *Whittier* v. *Cocheco Manf. Co.*, 9 N. H. 454. But the language here would seem to indicate that the intention merely was to measure the quantity of water to be used. The measure of the plaintiff's right to water is the quantity used to carry two runs of stones in said grist-mill on the 15th day of April, 1820, when the apportionment was made between McIntire and Hunt. The plaintiff may appropriate that amount to any use he pleases, as against this defendant; or he may use in his mill as many runs of stones more than two, as he will, provided he can do so by introducing improved water-wheels and machinery, with the quantity of water thus granted him, without the right to object in any quarter.

There must, therefore, be judgment for the plaintiff, leaving his damages to be assessed at the trial term of this court; unless the case should be discharged.