WILLIAM M. DAVIS, assignee, &c.,

*v.*

JOSEPH HOWELL, assignee, &c.

On marshaling the assets of both partnership and individual estates, under separate assignments for the benefit of creditors, the partnership creditors are not entitled, after exhausting the partnership assets, to resort to the individual assets until after the individual creditors' claims have been satisfied.

Bill for relief. On final hearing on bill and answer.

*Mr. J. F. Dumont,* for complainant.

*Mr. G. M. Shipman* and *Mr. J. G. Shipman* for answering defendants.

THE CHANCELLOR.

John C. Bennett and James M. Andrews were, on or about the 10th of February, 1876, partners in business in Phillipsburg. On that day they made an assignment under the assignment act, for the equal benefit of their creditors, to the complainant, William M. Davis. Five days after the making of that assignment Andrews made an assignment, under the act for the equal benefit of his creditors, to the complainant and Joseph Howell, and about the same time Bennett made a like assignment to Sylvester A. Comstock and Charles F. Fitch. The partnership estate will pay a dividend of only about eleven per cent. of the partnership debts. Most of the partnership creditors have put in their claims under the assignment of Andrews, and claim and insist upon a proportionate participation with his individual creditors therein as to so much of their claims as may not be paid out of the partnership estate, and they threaten the complainant and his co-assignee of Andrews's estate with legal proceedings if their demand be not complied with. The complainant therefore

NOTE.—See *Howell* v. *Teel, 2 Stew. Eq. 490, note.*—REP.

Davis v. Howell.

comes into this court for protection and instructions as to his duty in the premises. His co-assignee, Howell, is a creditor of Andrews's estate, and he is made a defendant.

The question presented has been often discussed, and, though there exists some contrariety of judicial determination upon it, must be considered as settled by the great weight of authority. The rule is laid down in the text-books that joint debts are entitled to priority of payment out of the joint estate, and separate debts out of the separate estate. *Story's Eq. Jur.* § *675; Snell's Prin. of Eq. 419; Story on Part.* § *376; Kent's Com. 64, 65; Parsons on Part. 480.* And though the propriety of the rule has been often and persistently questioned on the ground that it is a violation of principle, and devoid of equity, and was originally adopted from considerations of convenience only, and in bankruptcy cases, and not on principles of general equity, yet it is so firmly established that it must be regarded as a fixed rule of equity. Its history is so well known, and has been so often stated, that it is profitless to repeat it. It was declared in 1715, in *Ex parte Crowder, 2 Vern. 706;* it was affirmed by Lord Hardwicke, and though Lord Thurlow refused to follow it, it was restored by Lord Loughborough and followed by Lord Eldon, and it has existed ever since in the English chancery. It has an exception where there is no joint estate and no solvent partner. But where there is any joint estate the rule is to be applied. That part of the rule which gives the joint creditors a preference upon the joint estate has been repeatedly recognized in this state. *Cammack* v. *Johnson, 1 Gr. Ch. 163; Matlack* v. *James, 2 Beas. 126; Mittnight* v. *Smith, 2 C. E. Gr. 259; Scull* v. *Alter, 1 Harr. 147; Curtis* v. *Hollingshead, 2 Gr. 402; Brown* v. *Bissett, 1 Zab. 46; Linford* v. *Linford, 4 Dutch. 113.* In *Scull* v. *Alter* the supreme court recognized the rule in all its parts. Chief Justice Hornblower, by whom the opinion of the court was delivered (the question arose under an assignment under the assignment act, and was the same as is presented in this case), said: "But if it is an assignment not only of the partnership effects and property of the firm of Carhart & Britton, but also an individual and several assignment by them of their

respective and several estates, then it must be treated as such. The estates and debts must be marshaled; the partnership effects applied in the first instance to the partnership debts; the effects of Carhart applied in the first instance to the payment of his separate debts, and in like manner the effects of Britton to the payment of debts due from him individually."

In Connecticut the rule is not followed, and that part of it which gives the separate creditors a preference upon the separate estate has been repudiated. *Camp* v. *Grant, 21 Conn. 41.* It has been repudiated also in certain other states. *Bardwell* v. *Perry, 19 Vt. 292; Emanuel* v. *Bird, 19 Ala. 596.* But the doctrine is recognized elsewhere, and has been established after thorough discussion and careful consideration. In *Wilder* v. *Keeler, 3 Paige 167,* Chancellor Walworth, after a full discussion of the subject, gives the sanction of his weighty opinion to the rule as a doctrine of equity. He says: " In the case now under consideration there was, at the death of G. F. Lush, a large joint fund belonging to the partnership, out of which the joint creditors were entitled to a priority of payment, and out of which several of the joint creditors who have come in under this decree, have actually secured a portion of their debts. Nothing but an unbending rule of law should, under such circumstances, induce the court to permit them to come in for the residue of their debts, ratably, with the separate creditors. The amount of the fund which will remain after paying the separate creditors being a fund which could not be reached at law by the joint creditors whose remedy survived against the surviving partner alone, must be considered in the nature of equitable assets, and must be distributed among the joint creditors, upon the principle of this court that equality is equity." The doctrine was recognized in *Morgan* v. *Skidmore, 55 Barb. 263.* In Pennsylvania in *Bell* v. *Newman, 5 S. & R. 78, 91, 92,* Gibson (afterwards chief-justice), in a dissenting opinion, strongly supports the rule as one founded on the most substantial justice. In *Black's Appeal, 44 Pa. St. 503,* and again in *McCormack's Appeal, 55 Pa. St. 252,* the doctrine is completely recognized and affirmed. In South Carolina, in *Woddrop* v. *Price, 3 Desauss. 203; Tunno* v.

Davis v. Howell.

*Trezevant, 2 Desauss. 264,* and *Hall* v. *Hall, 2 McCord's Ch. 269,* the doctrine was held to be a doctrine of equity. In Massachusetts it is established by statute. In *Murrill* v. *Neill, 8 How. 414,* it is recognized by the supreme court of the United States.

The objection that is always pressed as the conclusive argument against it is, that partnership debts are several as well as joint, and it is urged that therefore the partnership creditor has an equal claim upon the individual estate with the separate creditor. But it is beyond dispute that in equity the former has a preferred claim upon the partnership estate. To accord to him an equal claim as to the balance of his debt, which the partnership assets may not be sufficient to satisfy, with the individual creditor, would be to give him an advantage to which he is not equitably entitled. If he obtains a legal lien on the separate estate he will not be deprived of it. *Wisham* v. *Lippincott, 1 Stock. 353; Randolph* v. *Daly, 1 C. E. Gr. 313; National Bank* v. *Sprague, 5 C. E. Gr. 13; Howell* v. *Teel, 2 Stew. Eq. 490.* But if he has no such lien, and the assets are to be marshaled in equity, that same equitable doctrine by which the partnership assets are devoted in the first place to the payment of his debt to the exclusion of the separate creditor, and to which he is indebted for the preference, will, in like manner and for like reason, give the latter preference upon the separate property. Such was the view of Chancellor Kent. He says : "So far as the partnership property has been acquired by means of partnership debts, those debts have, in equity, a priority of claim to be discharged, and the separate creditors are only entitled in equity to such payment from the surplus of the joint fund after satisfaction of the joint debts. The equity of the rule, on the other hand, equally requires that the joint creditors should only look to the surplus of the separate estates of the partners after payment of the separate debts. It was a principle of the Roman law, and it has been acknowledged in the equity jurisprudence of Spain, England and the United States, that partnership debts must be paid out of the partnership estate, and private and separate debts out of the private and separate estate of the individual partner." *3 Kent's Com. 64, 65.* The obvious infirmity of the objection

Davis v. Howell.

to the rule is, that it leaves out of consideration the fact that it is to equity that the joint creditor is indebted for his preference. It is also urged that instead of the rule, it would be more equitable to require the joint creditor to have recourse to the partnership property before allowing him to participate in the separate estate, on the equitable ground that he has two funds for the payment of his debt, while the separate creditor has but one; but the rule as established is a rule of justice and equity. It has for its basis the presumption that joint debts have been contracted on the credit of the joint estate, and separate debts on that of the separate estate. It has the weight of great authority and long establishment, notwithstanding persistent objection and some fluctuation, and it is based on equitable principles. Sound policy is in its favor. Though there may be, as there is in the case of all such rules, instances in which it works unsatisfactorily, yet that on the whole, and as a rule, it has not operated unjustly, is evidenced by the fact that it has existed so long (*Ex parte Crowder* was decided in 1715), notwithstanding opposition, and that in Massachusetts, at least, it has, in the face of the opposition referred to, been established by legislative authority, and that, too, as lately as 1838. In this state it has, as has been shown, the sanction of our judicial tribunals, and it is too firmly established to be disturbed. It is true that in *Wisham* v. *Lippincott, 1 Stock. 353, 356,* the chancellor expressed strong doubt of its correctness, as a general rule; but in the other cases before cited, both previous and subsequent, the rule has been recognized without any expression of disapprobation or dissatisfaction.

There will be a decree that the joint assets be first applied to the payment of the joint debts, and the separate assets to the separate debts, and that the joint creditors may participate in any surplus of the separate assets which may remain after payment of the separate debts. The costs of the parties will be paid out of the funds represented by the complainant—the partnership estate—and Andrews's estate in equal shares.