WESTINGHOUSE ELECTRIC MFG. CO. *v.* BARRE & MONTPELIER TRACTION & POWER CO., ET AL.

November Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1924.

*Receivers—Claim of City for Paving Track Area of Street Railway Not Entitled to Priority Over Existing Contract or Statutory Liens—Status of Receiver—Effect of Receivership On Existing Liens—Court May Decree Certain Receivership Charges to Be Prior Lien—Source of Court's Power—Rule as to Priority of Receivership Expenses—Status of Expense for New Construction with Respect to Priority—Payment by Surety for Default of Company in Its Franchise Obligations as to Paving Not Entitled to Priority as Receivership Expense—State Tax Against Street Railway Entitled to Priority—Claim of Injured Passenger of Street Railway Entitled to Priority Over Existing Mortgages—Burden of Proof as to Priority of Unsecured Creditor—No Priority for Money Loaned—Claims for Office Rent, Clerk Hire, and*

*Bookkeeping Supplied by Another Company Not Entitled to Priority—Claim for Electric Current for Power and Lighting Supplied Street Railway Entitled to Priority— Charge for Money Paid by Another Company to Its Employees for Work Done for Street Railway Not Entitled to Priority—Estoppel—Priority of Claim for Material Furnished Not Defeated Because Attachment Included Items Not Entitled to Priority—Claims for Legal Services, Printing, etc., Not Entitled to Preference—Supplies for Repairing Electric Equipment Entitled to Preference—Priority Limited to Avails of Property on Which Statute Gives Lien.*

1. Although the franchise of a street railway company required the road to be maintained and operated in accordance with certain terms and regulations, among which was the requirement that it should pave the track area and that if it failed so to do the city might do the work and charge the cost thereof to the company, where such franchise contained no provision for a lien on the property, a court of chancery, in receivership proceedings, had no authority to give claim for paving so done by the city priority over existing contract or statutory liens.

2. Receiver is the "arm of the court" by which it administers the trust for the benefit of all the creditors.

3. The court receiving the property of the insolvent impressed with all existing rights and equities of creditors, the appointment of a receiver vests in the court no absolute control over the property and no general authority to displace vested liens, the relative rank of claims and standing of liens remaining unaffected by the receivership.

4. The foregoing general rule is subject to the exception that the court may decree the charges of a receiver for the care and protection of the property as a prior claim and lien against the property paramount to other liens or incumbrances.

5. Power of the court to make proper receivership expenditures an equitable charge upon the property does not arise nor depend upon the contract relation of the parties, but arises solely from its own act, the possession and authorized acts of the receiver being the possession and acts of the court.

6. Ordinarily, preference to an unsecured claim is not permissible and the power to award priority to receivership expenses is

limited to such expenditures as are necessarily incurred in the care and preservation of the property.

7. In railroad receivership the expense of new construction is ordinarily not a proper item of charge, where the prior rights of mortgagees are involved.

8. Claim by a surety, compelled to pay for the default of a street railway company in its franchise obligations respecting paving of track area, cannot properly be given priority as receivership expense, as it can in no way be related to the care and preservation of the property.

9. Taxes assessed against a street railway company under G. L. 991, 992, and 1001, on the appraised value of its property, acquired, constructed, or used for railroad business or purposes, including franchises, rights of way, etc., were properly given priority in receivership proceedings, such a tax being a property tax and not a franchise tax.

10. Under G. L. 5130 and 5255, attachment of property of a street railway company specified in such statutes by one having a claim against the company for an injury sustained on its road by negligence of the company has priority over existing mortgages on the company's property, such sections not having been repealed by chattel mortgage legislation of 1878 (Acts 1878, No. 51, 99).

11. Where the charter of a street railway company expressly provided that it should be subject to all the duties and obligations and other provisions prescribed by law relating to railroads, the provisions of G. L. 5130 and 5255 apply and give the attachment of its property as specified in such sections by a passenger, injured by the company's negligence, priority over existing mortgages on such property, notwithstanding that the general law making the provisions of Title 27 relating to railroads to apply to all railroads, however operated, was not enacted until after mortgage was executed.

12. An unsecured creditor seeking to found a claim of priority under G. L. 5130 in receivership proceedings has the burden of proving affirmatively the existence and priority of his lien, in order to have claim preferred over mortgage bondholders.

13. Unsecured creditor of a street railway company *held* not entitled to priority, under G. L. 5130, for money loaned such company.

14. Items of office rent, clerk hire, and bookkeeping, supplied under contract therefor to a street railway company by an electric

power company owning 90 per cent. of the railway company's stock did not come within the meaning of "services rendered" as used in G. L. 5130, and was improperly classified in receivership proceedings as a preferred claim.

15. Electric current for power and lighting supplied to such street railway company by such power company was properly classified as "material furnished" within the meaning of G. L. 5130, and claim therefor had priority over existing mortgages.

16. Charge for money paid by a power company to its employees for work done by them for a street railway company was not entitled to preference under G. L. 5130 over an existing mortgage as "services rendered," the claim being simply for money advanced, as to which the power company had the standing of a general creditor.

17. Mortgage on property of a street railway company providing that such company might replace certain of the mortgaged property when worn out and sell same in effect discharged of the mortgage, but that the company should not be entitled to create any mortgage or charge in priority to the mortgage, did not estop a power company owning 90 per cent. of the stock of the railway company from claiming preference over mortgagee under G. L. 5130 on indebtedness for materials supplied the railway company.

18. Right of priority of such power company under G. L. 5130 over mortgagee was not defeated by fact that it attached street railway company's property on its entire claim, a part of which was not within the statute, the attachment not being necessary to give the preferred creditor standing in the receivership proceedings in equity.

19. Claims against an insolvent street railway company, in receivership proceedings, for legal services, printing, telephone rentals, clearing snow from tracks, and additional premium on insurance policy covering workmen's compensation liability *held* not entitled to preference under G. L. 5130.

20. Claim for supplies for repairs of electrical machinery necessary for the continued operation of a street railway was entitled to preference under G. L. 5130.

21. Under G. L. 5130, authorizing the attachment of mortgaged furniture, cars, engines, and rolling stock of a railroad by one sustaining an injury thereon by its negligence, or for services rendered or materials furnished to keep such road in repair

or run same, and providing that when so attached such property may be taken, held, and disposed of as though unmortgaged, it was error, in receivership proceedings, to give claim of passenger of street railway company for injuries sustained on its road by its negligence priority over claims for services rendered or materials furnished to the company, for the purposes specified in such statute, and to give this class of claims priority over the mortgage to the full extent, the claimants being entitled to no more than the avails of the property on which such statute gave them right to a lien, with equal priorities among themselves.

APPEAL IN CHANCERY in receivership proceedings. Heard on the pleadings, including petitions and cross-bill by various parties in interest, and on evidence presented in vacation after the March Term, 1922, Washington County, *Wilson,* Chancellor. From a decree giving certain unsecured creditors preference over mortgage bondholders the American Trust Company appealed. *Reversed and remanded, with directions.*

*J. Ward Carver* for plaintiff.

*Fred E. Gleason* for defendant Barre & Montpelier Traction & Power Co.

*A. L. Sherman* and *Weld A. Rollins* for American Trust Co.

*Edward H. Deavitt* and *George L. Hunt* for city of Montpelier.

*John W. Gordon* for R. J. Stewart.

*Fred B. Thomas* for the State.

*H. C. Shurtleff* for the receiver.

TAYLOR, J. This is a receivership proceeding originally instituted against the Barre & Montpelier Traction & Power Co., for the sake of brevity referred to as the Traction Company, the Montpelier & Barre Light and Power Co., an attaching creditor of the Traction Company, hereinafter referred to as the Power

Company, and H. J. Slayton, a deputy sheriff, holding an execution in favor of one Stewart, a judgment creditor of the Traction Company. Subsequently said Stewart and numerous other creditors of the Traction. Company became parties to the proceeding. Meanwhile a receiver was appointed who took over the property of the Traction Company and has had the possession and management thereof hitherto.

The Traction Company is a Vermont corporation, and at the time the receiver was appointed was engaged in the operation of an electric railway in the cities of Montpelier and operation of an electric railway in the cities of Montpelier and Barre and the town of Berlin. Since the appointment of the receiver he has continued the operation of the railway under the direction of the court of chancery. See 97 Vt. 306, 123 Atl. 201. In 1897 the Traction Company issued coupon bonds to the amount of $100,000, secured by mortgages of its property to the American Trust Company, as trustee. The interest on the mortgage indebtedness falling due since the appointment of the receiver has not been paid. The Traction Company being thus in default, the Trust Company presented its bill of complaint, praying for foreclosure of its mortgages, which it had leave to file in the receivership proceedings. At the final hearing the Trust Company claimed a first lien on all of the tangible property of the Traction Company and asked for a judicial sale or a strict foreclosure. No question was made as to the validity of the mortgage indebtedness, nor that the Trust Company was entitled to a decree of foreclosure, but certain of the claimants asserted priorities as to bondholders and to other claimants as well, which were the only questions contested. (1) It was ordered that all receivership expenses, including the compensation of the receiver and of his counsel, taxes accrued since the appointment of the receiver, and expenses incurred in operating the railway under the orders of court be first paid and provided for. The claim of the city of Montpelier for paving was allowed as a receivership expense. (2) The claim of the State for taxes, except such as had accrued since the appointment of the receiver which were allowed as a receivership expense, were adjudged to be a lien upon all of the property of the Traction Company, subject only to the payment of receivership expenses. (3) The Stewart claim was given priority as against all claims except the foregoing. (4) Certain specified claims, thirty in number,

were allowed with priorities equal among themselves against all other creditors, including the bondholders, except those named above. (5) Other claims were allowed as those of general creditors, without priority. The American Trust Company was decreed an absolute foreclosure, subject to the payment of the claims which had been given priority specified in paragraphs (1) to (4) inclusive, with limited time for the Traction Company and general creditors to redeem. On failure to redeem and of the Trust Company to pay the claims given priority within a limited time after the expiration of the time of redemption, it was ordered that the receiver should sell the remaining assets of the Traction Company at public auction by a date named, distribute the proceeds thereof in accordance with the foregoing priorities, and render final account in the premises as soon as feasible. The American Trust Company filed exceptions to the chancellor's ''findings of fact and rulings of law,'' which were, upon consideration, overruled. From the final decree the Trust Company has appealed.

The questions argued relate principally to the right of the preferred creditors of the Traction Company to priority over the bondholders, though counsel for Stewart insists that his claim should be paid in advance of the claim of the city of Montpelier, while counsel for the Power Company insists that its claim underlies both the Stewart judgment and the city's paving claim. The conflicting claims can best be considered in the order in which they are given priority by the decree.

## CLAIM OF THE CITY OF MONTPELIER

[1] While this claim is prosecuted in the name of the city it is for the benefit of the National Surety Company. The claim is for the expense of paving the track area in certain streets of the city occupied by the Traction Company's railway, which, by the terms of its franchise, is made a charge against the company. The nature and foundation of the claim is fully stated in *City of Montpelier* v. *National Surety Co.*, 97 Vt. 111, 122 Atl. 484. While the action on the Surety Company's bond was pending the city filed its claim in this cause. Pending the appeal from the decree and after satisfying the final judgment against it in the action at law, the Surety Company applied for leave to prosecute the claim of the city for its benefit which was granted.

The situation, then, is this: The city's judgment has been fully satisfied by the Surety Company and the latter, by leave of the court, supports an affirmance of the decree below for its own benefit as subrogee of the city. The claim having been allowed by the chancellor as a receivership expense is thereby given priority to all of the other litigated claims. The Trust Company, Stewart, and the Power Company severally object to this part of the decree, and counsel for the receiver argues in opposition to the allowance of the claim as an expense of the receivership.

The franchise under which the paving claim accrued went into effect in 1918, while the original bond mortgage bears date in 1897. It is not claimed, however, that this affects the rights of the parties. It appears that the franchise of 1918 was accepted by the Traction Company and the bondholders in lieu of the original franchise and that a "supplemental indenture" was executed, which in effect adapted the bond mortgage to the situation as it then existed. For present purposes, then, we may treat the franchise as antedating the Trust Company's mortgage. It may be admitted that the relations of the parties are such that the Surety Company would equitably be entitled to subrogation; but manifestly it would not thereby acquire any better standing, at least, than that of the city. Could the latter successfully defend the decree, if its claim had not been paid by the Surety Company? In support of the claim to priority, counsel rely not only upon the claim that the paving expense was properly allowed as a charge of the receivership, but they insist that the obligation of the Traction Company under the franchise was a condition annexed to the grant, and that thereby a charge upon the property of the company was created for the performance of the duty imposed by the franchise. It is recognized that the franchise contains no provision in terms reserving a lien upon the property; but it is urged that such is the result of a condition annexed to the grant, as the power granted can be exercised only upon the conditions specified. It is not questioned, but seems to be tacitly admitted, that to give the city's claim priority over the mortgage something in the nature of a lien attaching to the property prior to the mortgage must be found. Such is the doctrine of the cases that permit an otherwise unsecured claim to displace the mortgage security. See 22 R. C. L. 1121, where it is said, "The creditor must obtain a lien upon the property

of the company, or security in some other form, or he will have to take his chances with all other creditors,'' citing *Fogg* v. *Blair*, 133 U. S. 534, 33 L. ed. 721, 10 Sup. Ct. 338.

In brief, the circumstances attending the granting of the Traction Company's franchise were these: The Traction Company was authorized by its charter to occupy the streets of the city with its railway, ''observing and complying with all lawful ordinances and regulations as to the use of streets and of highways.'' The city council had authority to ''fix, demand, impose, and enforce'' just and reasonable terms, conditions, and regulations for the use or occupation of any street in the city by the Traction Company, and to prohibit the use thereof until such terms had been complied with. No. 293, Acts of 1912, § 63, par. 38. The franchise recites that the terms, conditions, and regulation thereof ''are fixed, demanded and imposed as a full consideration for the permission'' given to maintain and operate the street railway in the streets of the city. By the terms of the franchise permission is given the Traction Company, its successors and assigns, to construct, and for a term of years to operate, an electric street railway system in specified streets of the city; and it is stipulated that such railway ''shall be maintained and operated in accordance with the following terms and regulations.'' Among the ''terms and regulations'' agreed to are the provisions relating to the maintenance of the track area by the Traction Company, including the provision that, if the company should fail to meet the requirement of the franchise in this regard, ''the city may do the work necessary therefor, and from time to time, during the progress of said work, charge the reasonable cost thereof to the company, which shall be paid by the company upon the certification thereof by the city treasurer.'' The Traction Company is required at all times to protect the city by a $10,000 bond, with surety satisfactory to the city council, conditioned upon the faithful performance of its duties and obligations under the franchise, in default of which the city council may declare the franchise forfeited.

In substance, the paving agreement was an executory contract secured primarily by the bond of the Surety Company. While it may be that it was so far a condition of the grant that the right of. the Traction Company to continue to occupy the streets of the city would be dependent upon a compliance with the agreement, still something more would be needed to give the

claim of the city the priority relied upon.  As seen, the franchise carries no provision for a lien on the property, in the absence of which, as a general rule, the court of chancery would have no authority to give the paving claim priority over existing contract or statutory liens.  See *Pensacola* v. *Northup,* 66 Fed. 689, 14 C. C. A. 59; *Toledo, etc. R.* v. *Hamilton,* 134 U. S. 296, 33 L. ed. 905, 10 Sup. Ct. 546.

[2-5]   It should be remembered that the receiver is "the arm of the court" by .which it administers the trust for the benefit of all the creditors.  The court receives the property of the insolvent impressed with all existing rights and equities of creditors, and the relative rank of claims and the standing of liens remains unaffected by the receivership.  *Poland* v. *Lamoille Valley R. R. Co.,* 52 Vt. 144, 174.   The appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested liens.  *Kneeland* v. *American Loan, etc. Co.,* 136 U. S. 89, 34 L. ed. 379, 10 Sup. Ct. 950; *Old Colony Trust Co.* v. *Medfield, etc. Ry. Co.,* 215 Mass. 156, 102 N. E. 484; 23 R. C. L. 108; High on Receivers, § 138.   See *Baldwin* v. *Spear,* 79 Vt. 43, 64 Atl. 235.   Such is the general rule as to the preservation of existing rights of creditors.   However, there are certain well-recognized exceptions which we are required to notice.   It is undoubted that a court which has appointed a receiver to take charge of property and care for and protect the same may decree the charges therefor as a prior claim and ·lien against the property paramount to other liens or incumbrances.   23 R. C. L. 109; 22 R. C. L. 1134.   The power of the court to make proper receivership expenditures an equitable charge upon the property does not arise nor depend upon the contract relation of the parties, but arises solely from its own act.   The possession and authorized acts of the receiver are the possession and acts of the court.   *Langdon* v. *Vt. & Can. R. R. Co.,* 54 Vt. 593, 598.

[6-8]   The decree cannot be affirmed on the theory of an equitable lien on the property to secure the paving agreement. No facts are found tending to support the implication of such a lien.   It seems plain from the terms of the franchise that there was no intention to charge the property with a lien.   The claim must stand or fall as allowed by the chancellor, *viz.,* as receivership expense, which raises the question how far the court has authority to go in charging the property on which are existing

liens with receivership expenditures without the consent of such lien-holders.   The effect of ordering the payment of the paving claim as a receivership expense is to give a preference to an unsecured claim, which, in ordinary circumstances, is not permissible.   *Ellis* v. *Railway,* 107 Mass. 1; *So. Express Co.* v. *Western N. C. R. R. Co.,* 99 U. S. 191, 25 L. ed. 319; High on Receivers, §§ 391, 398.   It is a general and well-settled rule that the power to award priority to receivership expenses is limited to such expenditures as are necessarily incurred in the care and preservation of the property, the accepted doctrine being that the power of the court extends only to the custody and preservation of the property.   High on Receivers, § 390.   Thus, in railroad receiverships, the expense of new construction is ordinarily held not to be a proper item of charge, where the prior rights of mortgagees are involved.   See note 54 A. S. R., p. 415; 22 R. C. L. 1135. It is said in High on Receivers, § 394h: ''The allowance of claims, which results in the displacement of the priority of mortgage liens, is to be regarded as the exception, and not as the rule, and such claims will not be given a preference unless they may fairly and reasonably be regarded as debts incurred in the ordinary, daily operation and maintenance of the road.   Where the expense is an extraordinary one, incurred outside the ordinary course of the business of the road, such as for original construction or reconstruction, or for extraordinary repairs, or for extensions or permanent improvements, the preference will not be granted.''

Tested by these principles, it must be held that the claim could not properly be given priority as receivership expense. It could in no way be related to the care and preservation of the property.   The paving was more in the nature of extraordinary repairs or permanent improvements, of the railway, though, as matter of fact, it was work on the street and not on the property of the Traction Company at all.   It is argued that by continuing to operate the railway the receiver adopted the franchise and became bound by the paving agreement in spite of his refusal.   Nothing done or omitted by the receiver gives the claim any peculiar equitable standing, in the absence of which, as already seen, the priority awarded cannot be maintained.   Recognition of the agreement by the receiver would not affect the priorities of creditors; so, if it were to be held that the receiver was operating the railway under the franchise, it would not

follow that the paving expense could be made a prior charge on the mortgaged property. We are unable to discover any equitable ground on which the paving claim is entitled to priority. The cases chiefly relied upon by the Surety Company involve the question of the liability of a receiver for rent of premises held by the insolvent as lessee of which he has taken possession. They serve to show that some peculiar equity is required to sustain a preference such as is sought here, but are not authority in support of the decree.

## STATE'S CLAIM FOR TAXES.

[9] The taxes in question are the taxes assessed against the Traction Company for the years 1920, 1921, and 1922, aggregating $5,625, one-half of which was abated by No. 181, Acts of 1923. The taxes were assessed pursuant to G. L. 1001 at the rate of one and a fourth per cent. of the appraised value of "the property and corporate franchise" of the company obtained and established as provided in G. L. 991 and 992. The Trust Company alone objects to the decree giving the taxes priority. Counsel brief the claim that the tax was a franchise tax, and that, on the authority of *State* v. *Bradford Sav. Bk. & Tr. Co.*, 71 Vt. 234, 44 Atl. 349, such a tax was not properly assessed while the Traction Company was in the hands of a receiver. But in oral argument counsel stated that the tax was partly a franchise and partly a propery tax. Referring to the statute making the tax a first lien upon the property (G. L. 967), in connection with the claim that it was passed after the mortgage was executed, counsel conceded that the statute was valid so far as it concerned the tax on property.

There can be no doubt that the claim for taxes was properly given priority. The tax was not a franchise tax, but a property tax pure and simple. The difficulty arises from confusion of terms and failure to distinguish between a franchise tax, so-called, and taxing a company's franchise as property. The basis of the taxes in question was the appraisal at its fair and just value of the Traction Company's property "acquired, constructed or used for railroad business or purposes" (G. L. 992), which included by statutory definition "all franchises, rights of way, road-beds, tracks, * * * rolling stock, equipment and all other real and personal property of whatever character used or

employed in the operation of a railroad or in conducting its business." G. L. 991. It is of no practical consequence whether the taxes accruing during the receivership should be treated as receivership expense or as preferred claims under the statute.

## THE STEWART CLAIM.

[10, 11] This claim originated in a suit for damages for personal injuries received through the negligence of the Traction Company while Stewart was riding as a passenger for hire on one of its cars. The accident occurred May 10, 1918, and the writ was served August 19, 1918, by delivery of a copy to the defendant (The Traction Company), no attachment of property being made. Such proceedings were had as resulted in a judgment for the plaintiff at the October Term, 1920, of this Court. Execution was seasonably issued on the judgment and placed in the hands of Deputy Sheriff Slayton, who, on November 11, 1920, levied the execution upon certain personal property of the Traction Company which was already under attachment in the suit of the Power Company, to which we shall have occasion to refer later. Both the attachment and levy of execution were made by copy only, neither officer making the service actually taking the property into his possession. The property was advertised for sale on the execution, pending which the receivership proceedings were instituted and the sale was enjoined until the receiver was appointed and all of the property of the Traction Company by order of court placed in his hands. Stewart claims priority as against all other creditors of the Traction Company, the State's claim for taxes alone excepted, relying upon G. L. 5130 and 5255 as a basis of the preference. The Power Company, as a prior atttaching creditor, and the Trust Company, as mortgagee, object to the decree respecting this claim so far as it works a preference against them. In this connection it should be noted that the Stewart and Power Company claims are the only ones involved in the receivership on which suits have been brought or the property of the Traction Company attached.

What is now G. L. 5255 had its origin in a section of No. 26, Acts of 1855, which act related primarily to the appointment of a railroad commissioner and the general supervision of the railroads of the State. It provides: "When the property or per-

son of another is injured through the default of a person or corporation owning or operating a railroad, or the agent or employees thereof, the cars, engines and other property, which at the time of such an injury, are subject to use in the running and management of such road, and which have, at any time, been owned by said person or corporation, shall be held to be the property of the person or corporation, for the purpose of furnishing indemnity for such injury, and may be attached and levied upon as such at the action of the party injured." The effect of this statute is to create a lien on the specified property of a railroad company in favor of a person injured as Stewart was injured; and it would seem that it was intended to give the lien priority over mortgages of the property. However, we do not need to discuss that question, for the provisions of G. L. 5130, which was enacted a year later, takes care of the matter so far as now material. The statute provides how railroad franchises, furniture, cars, engines, and rolling stock may be mortgaged, and concludes: "This section shall not prevent such furniture, cars, engines and rolling stock from being attached by a person having a claim against the corporation owning such property, for an injury sustained on its road by negligence of the corporation or for services rendered, or materials furnished to keep such road in repair or to run the same, * * *; and such property, when so attached, may be taken, held and disposed of as though such property had not been mortgaged."

Manifestly, the statutes relied upon give the Stewart claim priority over the mortgage so far as the property levied upon is concerned, if they are still in force and apply to the Traction Company. *Poland* ·v. *Lamoille Valley R. R. Co.*, 52 Vt. 144, and *Lamoille Valley R. R. Co.* v. *Bixby*, 55 Vt. 235, is full authority for this conclusion. But the Trust Company insists that G. L. 5130 was superseded, and by implication repealed, by the chattel mortgage legislation of 1878, and that neither section is in force ·with respect to its mortgage, because of this legislation, and of section seven of the Traction Company's charter, wherein the corporation is empowered to mortgage its property to secure the payment of its bond indebtedness. We find nothing to indicate that the statutes in question are not in full force and effect. Taken together they indicate a settled legislative policy respecting a certain class of claims against railroad companies, and none of the legislation relied upon as

effecting a repeal contains anything inconsistent with this policy. Again, it is urged that the statutes in question do not apply to the Traction Company, the argument being that it was not organized as a steam railroad. There is no foundation for the claim. If for no other reason, the charter of the company expressly provides that it shall be "subject to all the duties and obligations and other provisions prescribed by laws of this State relative to railroad corporations." In view of this provision, it is of no consequence that the general law making the provisions of Title 27, relating to railroads, to apply to all railroads in the State, however operated, was enacted after the mortgage was executed. The charter provision was sufficient notice to the mortgagees that their security was subject to the lien created by the statutes. *Poland* v. *Lamoille Valley R. R. Co.*, 52 Vt. 144, 174. Whether the decree can be sustained as made will be considered later.

### POWER COMPANY'S CLAIM.

The Power Company is a Massachusetts corporation engaged in the electric light and power business with its principal office in Vermont, at Montpelier. It owns approximately ninety per cent. of the capital stock of the Traction Company. Practically all of the directors, and to some extent the other officers, of the two corporations have been the same persons during the time the Power Company's claim was accruing. Since 1913, in accordance with an agreement between the two companies, the Power Company has furnished office equipment, or office help for general accounting, and has done all of the general office work of the Traction Company for a compensation of $2,000 a year. One item of the Power Company's claim allowed with priority over the mortgage was $506.30 for office rent, clerk hire, and bookkeeping, under this contract within the period of six months prior to the appointment of the receiver. Part of the supplies for the Traction Company were furnished from the stock of the Power Company at cost plus a handling charge, and sometimes plus express and freight charges paid. Another item allowed with priority was $862.41 for expressage, freight, labor, and supplies as per schedule G. The Power Company furnished electric current for the operation of the railroad and for lighting and power at the car barns. The Traction Company had no linemen regularly in its employ. The line work

of the company was done by the Power Company's linemen while drawing their regular pay from the Power Company. A charge was made for such work, which appears to have been the wages paid the workmen plus liability insurance. Two of the items allowed with priority relate to these charges: One of $5,715.46 for electric power furnished, and the other of $243.56 for electric current for lighting. These items aggregating $7,327.73 were included in the claims of the fourth class as classified in the decree.

From time to time during some ten years the Power Company advanced money to the Traction Company to furnish necessary capital to carry on its business, pay accrued bills, including interest on bonded indebtedness, and for the general purposes of the company. The sums so advanced aggregated $71,500, which, with interest, was due and unpaid on November 1, 1920, when the Power Company brought suit on its entire claim against the Traction Company and attached real and personal property. The writ was entered in court, but further proceedings were enjoined by the receivership proceedings. The Power Company is dissatisfied with the preference awarded, and insists that the total amount due it should be preferred and given priority over all claims, except taxes and the expenses of the receivership. This position is untenable. Its right to priority is limited to that conferred by G. L. 5130. The chancellor properly classified the Power Company's claim with those for services performed and materials furnished, but erred in conceiving that the case was one for the application of the so-called six months' rule. He was asked to make an order giving priority to claims for services rendered, or materials and supplies furnished to the Traction Company, within such time before the date of the appointment of the receiver as should be determined, upon the theory that the services rendered and materials furnished, represented by the claims presented, were necessary for the maintenance and operation of the business of the Traction Company.

As bearing upon this claim the chancellor made the following findings: "I find that the business of the operation of an electric railway is such that bills for supplies, materials, machinery, and, to some extent, as to services would naturally remain unpaid for some time according to the general custom of the business. I find that without such materials, supplies, etc., being furnished the operation of the electric railway must neces-

sarily have ceased. * * * I find that six months is a reasonable time to allow in connection with this matter, if any time is to be allowed, and, in so far as the Court has power to do so, I order that claims for services rendered, or materials furnished, or supplies furnished, which were necessary for the continued operation of the railway of the Traction Company, shall have priority over the claims of general creditors and also as against the claims of the bondholders.'' With special reference to the Power Company's claim, the chancellor found that the electric power furnished the Traction Company was for motive power necessary for the operation of the railroad; that the current for lighting was necessary for use at car barns and other places in connection with the operation of the railroad; that the office rent and clerk hire were furnished in connection with the operation and management of the railroad, ''which, of course, required some bookkeeping and clerical work''; that the items for express, freight, labor, and supplies were for expressage and freight paid by the Power Company upon supplies necessary for the operation of the railroad, for the sale price of supplies sold by the Power Company to the Traction Company and necessary for the operation of the railroad, and for the actual cost to the Power Company of labor furnished to the Traction Company for repair work necessary for the operation of the railroads, ''the laborers being paid direct by the Power Company and the expense thereof being charged to the Transaction Company.''

It is quite apparent that the claims embraced in the fourth paragraph of the decree, including the Power Company's claim, were given priority upon the theory that the court had authority to give preference to debts for labor or supplies furnished within six months before the appointment of the receiver on purely equitable grounds. It would not be profitable to undertake any extended review of the cases dealing with the doctrine invoked to sustain this part of the decree. It is a departure from the general rule that a fixed legal right under a mortgage cannot be impaired by any equities subsequently arising, deemed permissible in case of railroad mortgages, owing to their peculiar character and the peculiar interests affected thereby. Though of modern date, the principle that courts of equity may, in certain circumstances, give certain unsecured claims priority of payment over established liens seems thoroughly established in some jurisdictions. It is unnecessary to decide, however, whether, or

to what extent, the doctrine should be applied in this State in view of the statute (G. L. 5130). The case at bar does not fall within the class of cases permitting the application of the principle. It will be seen on an examination of the decisions that the right to give priority to claims of this class over prior mortgages stands on the special theory which has been developed in regard to income. It is deemed that every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income. If it appears in the settlement of a receivership that income has been diverted and used, for example, to pay bonded indebtedness or to make permanent improvements, which ought in equity to have been employed to keep down debts for labor, supplies, and the like, it is within the power of the court to use the income of the receivership to discharge obligations which, but for the diversion of funds, would have been paid in the ordinary course of business. There are special circumstances, also, where, owing to such a diversion of income, equity has required the use of the proceeds of the sale of the mortgaged property in the same way. See 22 R. C. L. 1124 *et seq.*; 23 R. C. L. 110. The doctrine seems to have had its origin in the federal courts. Some of the earlier cases give countenance to the notion that the court of chancery had authority in all cases to give claims for labor or supplies a preference over prior mortgages. However, the matter was set at rest in *Gregg* v. *Metropolitan Trust Co.,* 197 U. S. 183, 49 L. ed. 717, 25 Sup. Ct. 415. In the absence of any diversion of income by which the mortgagees have profited, the court is without authority to make the claims for labor and supplies an equitable charge on the body of the fund. *Old Colony Trust Co.* v. *Medfield, etc. Ry. Co., supra,* is quite in point. Reference is made in *Poland* v. *Lamoille Valley R. R. Co.,* 52 Vt. 144, 176, to the equitable ground of priority arising from the failure of the mortgagor to apply the income of the railroad to payment of current expenses there expressly provided for in the mortgage. To the extent that the principle is recognized the case is consistent with what we now hold.

[12] The basis for the decree, if sustainable, is in the statute unaided by any special equities. It specifies the property as to which there may be lien superior to the mortgage, confining it to furniture, cars, engines, and rolling stock,—speaking

generally, the personal property of the railroad corporation. So far as now material, it limits the scope of the preference to persons having claims against the corporation owning such property (a) for an injury sustained on its road by negligence of the corporation; (b) for services rendered or materials furnished to keep such road in repair or to run the same. The findings not having been made with special reference to the requirements of the statute, some of the claims at least are left more or less in doubt. Of course it is incumbent upon one who seeks to found a claim upon the statute to prove affirmatively the existence and priority of his lien, in order to have the claim preferred over that of the mortgage bondholders. *Hassall* v. *Wilcox*, 130 U. S. 493, 32 L. ed. 1001, 9 Sup. Ct. 590. The following statement by the chancellor at the close of his findings explains the situation: "I have been requested by counsel for the receiver and by counsel for the bondholders to classify more definitely the claims which have been allowed, or to specify with exactness just what these claims comprise. As to many of these claims no evidence has been presented to the court and the court has no information as to their nature further than what can be obtained by examination of the claims themselves. In compliance with these requests, therefore, I have elaborated somewhat the description of the claims from what appeared in the tentative draft of the findings, and I make the claims now filed with the court a part of these findings."

In the circumstances, the most we are able to do is to state the general principles governing the matter of preferences under the statute in question. It is held in the Poland case, construing this statute, that general creditors are excluded—that the mortgage is valid against all creditors, except those especially enumerated. It is pointed out that every liability specified in the section grows out of the actual operation of the road. So far as it relates to services rendered, the statute affords protection only to employees for wages. It is said that it was the purpose of the Legislature to protect a class of employees who could not protect themselves; but as the protection afforded was in derogation of the rights of other creditors, it could not be extended by construction beyond the class of creditors specified. The opinion continues: "When, therefore, it (the statute) accords a priority to claims for 'services rendered or materials furnished for the purpose of keeping said road in repair or running the same,'

it is not to be extended beyond the obvious import of the language used. Services rendered in keeping the road in repair might be construed so as to include the officials of the road, but it was the intent of the Legislature to include only such persons as were engaged in manual labor in making repairs. Services rendered in running the road includes the same class of operatives and employees. The dividing line is between services rendered in the official and executive management and authority over the work of making repairs and running the road, and such laborers and employees as do this work. The employers are excluded, the employees included.'' With reference to what supplies should be classified as ''materials'' furnished to keep the road in repair or to run the same, the Poland case has this to say: ''The word 'materials' has substantially the same meaning when used in connection with the work of repairing that it does in the work of running the road, and means such supplies as are indispensable in making repairs upon the road or its equipment, and are annexed to the property and become part of it, or are consumed by it, in its use, such as iron, ties, lumber, wood, coal, oil, etc.''

[13-18] Tested by these rules, it is quite apparent that the claim of the Power Company for money loaned the Traction Company is not covered by the statute, and was properly classified as an unsecured claim. It is equally clear that the item for office rent, clerk hire, and bookkeeping, under the contract stated in the findings, is not within the statute, and was improperly classified as a preferred claim. The Power Company stands the same as any person furnishing materials to run the road or keep it in repair. It is entitled to preference for such items of this class as are found to have been absolutely necessary to the operation of the road. We see no reason why the electric current for power and lighting is not properly classified as ''material furnished'' in contemplation of the statute. It stands the same as coal or wood used to generate motive power. The charge for money paid by the Power Company to its employees for work done for the Traction Company is not, we think, within the contemplation of the statute. The preference is given to the person having a claim for services rendered, which necessarily implies the person by whom the service was rendered. The Power Company's claim is not for ''services rendered,'' but for money advanced on account of the Traction Company, as to which it

stands as a general creditor. The charges for express and freight would seem to fall in the same class. As already seen, there are no special equities in favor of the Power Company. While it is an independent corporation, its relation to the Traction Company and the management of its affairs was such as to give it a more favorable position to look out for its own interests than the creditors generally. It is urged that this relation should prevent the Power Company from asserting any priority over the mortgage indebtedness, and attention is called to a provision of the mortgage which is said to have the same effect. The provision referred to gives the Traction Company the right to replace certain of the mortgaged property when worn out and to sell the same in effect discharged of the mortgage, "but so that the Traction Company shall not be entitled to create any mortgage or charge in priority to these presents or to impair the value of this security." If this could be deemed an agreement of the Power Company, it cannot be given the construction claimed for it. It cannot be held that the Power Company is estopped to claim such preference as the statute affords. It is also claimed, in effect, that the Power Company defeated any right to priority it might otherwise have had by attaching the property on its entire claim, a part of which was manifestly not within the statute. The argument proceeds upon the theory that the judgment for the entire claim could not be satisfied out of the mortgaged property. But we are not concerned with what would be the situation in the supposed case. Here we are dealing with the equities of the situation created by the receivership proceedings. While the attachment was one step of the procedure at law to enforce the lien on the staute, it was not essential to give the preferred creditor standing in the equity proceedings. This is made clear in the Poland case, as has already appeared. Having assumed the custody of property to which certain creditors had a priority of legal right, it is for the court to give effect to this priority in the administration of the property. The receiver holds such property subject to the right of these creditors to have it made answerable to their claims, which they are entitled to have accomplished in some proper way in the final decree.

### OTHER CLAIMS FOR SERVICES AND MATERIALS.

[19, 20] The Trust Company objects to several of the claims classified in the fourth paragraph of the decree in addi-

tion to that of the Power Company.   These include the claims of F. E. Gleason for legal services; D. W. Edson for printing; New England Tel. & Tel. Co. for telephone rentals; city of Barre for clearing snow from the tracks; Travelers Insurance Co., for additional premium on insurance policy to cover workmen's compensation liability.   No facts are found entitling any of these claims to preference under the statute and the obvious nature of the claims is such that it is apparent the decree cannot be sustained as to them.   The claim of the Westinghouse Electric and Manufacturing Co., is challenged.   The particular ground advanced below is not relied upon here and that now relied upon is untenable.   The Trust Company does not specially question the allowance of priority because of the nature of the claim.   It appears that the claim is for supplies for repairs of electrical machinery.   The necessity for these and other supplies furnished which are given a preference is covered by the general finding that they were "necessary for the continued operation of the railway."   We think it sufficiently appears that the claim is entitled to preference under the statute.   The remaining claims of this class are not specially questioned by the Trust Company, and are apparently properly classed as claims preferred by the statute.

[21]   Enough has been said to show that the Stewart claim is not entitled to priority over the preferred claims listed in the fourth paragraph of the decree, but is of the same rank and entitled only to equal priority with such claims.   It has sufficiently appeared that it was error to give this class of claims priority over the mortgage to the full extent.   Such claimants are entitled to no more than the avails of the property on which the statute gave them the right to a lien.   As to this, they would have priorities equal among themselves; or, in other words, would share *pro rata* in the distribution of the fund created thereby.

It is evident that the cause will have to go back for further proceedings below.   It will be necessary to ascertain the amount and value of the property coming into the hands of the receiver on which the statute gave the preferred creditors a lien; and, at least so far as the Power Company's claim is concerned, to segregate those items as to which the statute gives the priority.   The necessary modifications of the decree do not need to be restated.

*Decree reversed, and cause remanded for further proceedings and decree in accordance with the views herein expressed. Let the Trust Company pay the costs of the plaintiff and of the State in this Court; let it recover its costs in this Court from the Power Company and the Surety Company on the basis of an equitable apportionment between them.*