See also D.C., 86 F.Supp. 546.

### In re INTERNATIONAL RY. CO.

No. 36453.

United States District Court
W. D. New York.

July 8, 1949.

Homer Woods and Francis Maloney, Buffalo, N. Y., for trustees.

Hellings, Ulsh, Morey & Stewart, Buffalo, N. Y., William I. Morey, Buffalo, N. Y., for Bondholders Protective Committee.

Regis O'Brien, Buffalo, N. Y., for Bondholders Protective Committee consisting of William J. Minsch, Jonathan Chace and James H. Sheppard.

Kenefick, Cooke, Mitchell, Bass & Letchworth, Buffalo, N. Y., John L. Hollands, Buffalo, N. Y., for Bankers Trust Co.

Adrian Block, Buffalo, N. Y., for various tort claimants.

Penney, Penney, Buerger & Siemer, Buffalo, N. Y., for Bondholders Protective Committee.

Fred C. Maloney, Corporation Counsel, Elmer S. Stengel, Asst., Buffalo, N. Y., for City of Buffalo.

KNIGHT, District Judge.

This is a proceeding to fix and determine the amount of the claim of the City of Buffalo represented by verified proof of a claim subscribed and sworn to November 28, 1947 and filed in these reorganization proceedings. The proof of claim filed by the City states "that International Railway Company, * * * was at and before the close of business on July 28, 1947, and still is, justly and truly liable to Claimant for an undetermined and unliquidated sum of money for such sums as may become due and owing in the future for repaving the area upon which streetcar tracks of the Debtor are now located, if and when bus routes are substituted for streetcar routes pursuant to franchises and consents heretofore duly granted by the City of Buffalo to the Debtor, International Railway Company and to its predecessor companies * * *."

This Court has complete jurisdiction of this matter. The claim of the City is alleged to be one existing at and before the close of business July 28, 1947. The claim was duly filed by the City in these reorganization proceedings under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. The City filed a general notice of appearance in the reorganization proceedings early in September, 1947, demanding service of all papers on its Corporation Counsel, and the City by its counsel has appeared and participated actively in the proceedings to date. The Trustees and the creditors have never disputed the fact that the City had and now has a claim for the removal of rails and resurfacing the track area on the eight streetcar lines remaining on July 28, 1947 when these reorganization proceedings were instituted. No objection has been made by the Trustees or creditors to the participation of said claim in any plan of reorganization resulting from these proceedings. The only question raised by them has been as to the amount of the claim and the treatment to be accorded it under the plan of reorganization.

In 1940 the International Railway Company and the City of Buffalo agreed upon a program for the substitution of buses for

streetcars on the remaining streetcar lines then in operation in the City of Buffalo. This program was incorporated in bus consents granted by the Common Council of the City of Buffalo which authorized the International Railway Company to substitute buses for streetcars on the remaining streetcar lines and further provided that application should be made prior to October 1, 1950 to the Public Service Commission of the State of New York by the company for the complete substitution of buses for streetcars on all the remaining streetcar lines. Under these consents the International Railway Company was to "remove the rails from its street railway line and resurface with asphalt the pavement in the area * * * occupied by the rails and between the rails and two feet outside the outer rails, which shall * * * removed from time to time."

Between 1940 and July 28, 1947 when these reorganization proceedings were instituted, International Railway Company substituted buses on a number of streetcar lines and removed the rails and resurfaced the track area in complete fulfillment of its said obligations to the City of Buffalo. All of this work was completed prior to July 28, 1947 except a small amount on East Utica Street which was in progress at that date and was completed shortly thereafter.

On July 28, 1947, International Railway Company, the Debtor herein, operated eight streetcar lines in the City of Buffalo and under the consents of 1940 as amended was obligated to convert these streetcar lines to buses and to remove the rails and resurface the track area. This substitution was to be pursuant to applications made to the Public Service Commission which the Company was obligated to make prior to October 1, 1950. Since July 28, 1947 the Trustees have substituted buses for streetcars on the Sycamore and Clinton streetcar routes but with the exception of a small portion of such routes rail removal and resurfacing has not been undertaken. On June 24, 1949, this Court authorized, on certain conditions, the purchase of sufficient buses to complete the substitution of buses for streetcars on all the remaining streetcar lines. The claim of the City as filed is for the cost of removing the rails and resurfacing the track area on the Clinton and Sycamore lines and on the six streetcar lines still remaining in the City of Buffalo.

Section 106 of the Bankruptcy Act provides that for the purposes of Chapter X, unless inconsistent with the context, "claims" shall include all claims of whatever character against a debtor or its property, except stock, whether or not such claims are provable under Section 63 of the Bankruptcy Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent. Section 196 of the Bankruptcy Act provides that after the approval of a petition for reorganization under Chapter X the Judge shall prescribe the manner in which and fix a time within which the proofs of claim of creditors may be filed.

Pursuant to the provisions of Section 196 this Court ordered that all claims against the Debtor other than bonds should be filed with the Trustees on or before December 31, 1947. Pursuant to this order the above claim of the City of Buffalo was filed with the Trustees within the time prescribed. The order of this Court fixing the time within which such claims should be filed provided that creditors in filing their claims should state whether or not they held any security for their claims. The sworn proof of claim filed by the City of Buffalo states that it does not hold any security for its claim.

On the basis of the claims filed the Trustees formulated a plan of reorganization which was filed on November 1, 1948. This plan was the result of many months of negotiations. It provided that the claim of the City of Buffalo was a general claim to be treated on the same basis as the unsecured portion of the claim of the mortgage bondholders and the unsecured portion of accident claims which portions were likewise classified as general claims. Under the plan of reorganization the reorganized company is to continue to operate under the franchises received by the

Debtor from the City of Buffalo and the property dealt with by the plan is to be free and clear of all claims and interests of creditors and stockholders of the Debtor except as provided in the plan or in the order confirming the plan. This is a customary and essential provision in a plan of reorganization.

Hearings on the Trustees' plan of reorganization have been in progress since December 29, 1948. The City of Buffalo as a creditor has participated in these hearings and objected to the classification accorded its claim under the plan and also to the feasibility of the plan. On February 21, 1949, this Court found the plan of reorganization submitted by the Trustees worthy of consideration and referred the same to the Interstate Commerce Commission, the Public Service Commission of the State of New York and the Securities and Exchange Commission. The Interstate Commerce Commission advised that it would make no representations relative to the plan. The Public Service Commission, after hearings on the plan, certified its approval on May 4, 1949. The Securities and Exchange Commission on June 30, 1949 filed a report approving the plan subject to minor amendments.

The claim as filed by the City of Buffalo did not state a dollar amount and on April 27, 1949 the Trustees filed with this Court a petition requesting that a hearing be held to fix and determine the amount of the City's claim. As the reorganization had progressed to a point where this step had to be taken in order to permit completion of the reorganization, this Court directed that a hearing be held on May 18, 1949 for the purpose of fixing and determining the amount of the City's claim.

■ At this hearing counsel for the Trustees introduced legal and competent evidence as to the amount of the City's claim. Counsel for the City refused to introduce evidence as to the amount of the City's claim and sought to withdraw the claim. Counsel for the City took the position that in view of the provisions of the plan of reorganization as to the claim of the City it would prefer to withdraw its

claim and enforce the obligations represented by its claim on the reorganized company under threat of cancelling those franchises which contain the obligation to remove rails and resurface the track area unless such cost were paid by the reorganized company. Any such action on the part of the City would be contrary to and defeat the plan of reorganization which provides that the property dealt with by the plan— and the term "property" is defined to include franchises—shall be free and clear of all claims and interests of creditors except the claims provided for in the plan or in the order confirming the plan and which defines the term "claims" to include all claims of whatever character against the Debtor or its property, whether or not such claims are provable under Section 63 of the Bankruptcy Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent.

■ Reorganization of a corporation under the Bankruptcy Act would be impossible if a creditor could at his election at this late date in the reorganization process withdraw his claim and enforce it against the reorganized company or in some other manner. The claim of the City is within the definition of "claims" as used in Chapter X of the Bankruptcy Act. The claim of the City was properly fixed with the Trustees as required by the order of this Court. The Trustees, in preparing a plan of reorganization, were entitled to rely upon the claims as filed by the City and other creditors. After almost two years of work the reorganization proceedings are coming to a close. It would have been abandoning the progress made to date if the motion of the City of Buffalo to withdraw its claim had been granted. Accordingly, the motion was denied. In re Pilsener Brewing Corp., 9 Cir., 1935, 79 F. 2d 63.

■ In the course of the hearing counsel for the City of Buffalo also took the position that the cost of removing the rails and resurfacing the track area on the Clinton and Sycamore streetcar routes was an expense of administration to be paid by the Trustees. However, repaving claims

of this nature have been held not to be expenses of administration. The decision of the Vermont Supreme Court in Westinghouse Electric Manufacturing Company v. Barre and Montpelier Traction Co., 1924, 98 Vt. 130, 126 A. 594, is in point. There the Court said: " * * * it must be held that the claim would not properly be given priority as receivership expense. It could in no way be related to the care and preservation of the property. The paving was more in the nature of extraordinary repairs or permanent improvements of the railway, though, as a matter of fact, it was work on the street, and not on the property, of the Traction Company at all. It is argued that by continuing to operate the railway the receiver adopted the franchise and became bound by the paving agreement, in spite of his refusal. Nothing done or omitted by the receiver gives the claim any peculiar equitable standing, in the absence of which, as already seen, the priority awarded cannot be maintained. Recognition of the agreement by the receiver would not affect the priorities of creditors; so, if it were to be held that the receiver was operating the railway under the franchise, it would not follow that the paving expense could be made a prior charge on the mortgaged property. We are unable to discover any equitable ground on which the paving claim is entitled to priority. The cases chiefly relied upon by the Surety Company involve the question of the liability of a receiver for rent of premises held by the insolvent, as lessee of which he has taken possession. They serve to show that some peculiar equity is required to sustain a preference such as is sought here, but are not authority in support of the decree." Ibid, 126 A. 594, 598.

The question of whether or not the plan of reorganization proposed by the Trustees is fair and equitable to the City of Buffalo and other creditors, and more particularly whether the claim of the City of Buffalo should be treated more favorably than the unsecured portion of the mortgage bonds and the unsecured portion of the accident claims, are questions which have been the subject of extensive hearings before this Court, and will be the subject of a further hearing before this Court on July 11, 1949. Whether or not the City may receive for its claim securities of the reorganized company under the plan of reorganization and also cancel as against the reorganized Company those franchises which contain a provision for removing rails and resurfacing the track area is likewise a question involved and to be determined in the hearings on the plan. Such questions are not presented for decision on this application.

█ This Court finds on the basis of testimony presented at the hearing that the amount of operating and non-operating track in the streets of the City of Buffalo which has not yet been removed totals 75.-153 single-track miles. In addition, there are 1.639 miles of single track which do not lie in paved streets and which the Debtor is consequently not obligated to repave. The cost of removing the Debtor's said streetcar rails from the streets of the City of Buffalo and of resurfacing with asphalt the pavement in the area occupied by the rails and between the rails and two feet outside the outer rails, as required under certain of the Debtor's franchises from the City of Buffalo, will amount to $2,311,808. The rails so to be removed are found to have a scrap salvage value of $280,259, and the net present cost of such track removal and repaving would therefore be $2,031,549. Accordingly, for the purposes of this reorganization proceeding under Chapter X of the Bankruptcy Act, said claim of the City of Buffalo is hereby determined and allowed in the sum of $2,031,549.